J-A30020-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| BENJAMIN J. RIVERA | |
| Appellant | No. 59 MDA 2016 |

Appeal from the Judgment of Sentence December 8, 2015
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-CR-0000978-2015

BEFORE:  BOWES, OLSON and STABILE, JJ.

MEMORANDUM BY OLSON, J.:                **FILED FEBRUARY 14, 2017**

Appellant, Benjamin J. Rivera, appeals from the judgment of sentence entered on December 8, 2015, as made final by the granting of his post-sentence motion on December 28, 2015.  We affirm.

The trial court accurately summarized the factual background of this case as follows:

> On November 11, 2014, around noon, Officer [Darrin] Bates [of the Harrisburg Police Department's Street Crimes Unit ("SCU")] was on surveillance in an area encompassing the 1200 and 1300 blocks of Derry Street where it intersects with Evergreen, Berryhill, Howard[,] and Vernon Streets.  Officer Bates was working as part of the SCU.  He testified that 95% of his work with the SCU involves illegal drug[-]related activity.
>
> The area where Officer Bates was conducting surveillance on the date of the incident is, in his years of experience, an area of high-crime and high-drug activity including the sale of heroin. . . .  Officer Bates identified Appellant as the person he had been surveilling on November 11, 2014.  He testified to

noticing Appellant because he saw him engage in what he perceived to be a hand-to-hand drug deal with an unidentified Hispanic male. Officer Bates did not radio other officers to respond because he was not absolutely certain of what he had seen and the other male had left the area very quickly. He did not want to cause confusion among the officers so he decided to continue watching [Appellant] to see if [he] engaged in drug related activity again. Following the first encounter, Appellant went back to the corner at Derry and Mulberry Streets where he stood by a corner store.

Officer Bates next saw another Hispanic male walk up to Appellant when they each took out a single monetary bill and exchanged them. [Officer] Bates saw Appellant put the bill in his wallet which he observed to be very thick with money. He explained that, in his extensive experience with street level drug dealers, the operations are run like a business in that separate people will hold the money and the drugs then the person with the money will exchange it in case it is marked by an undercover police officer posing as a buyer. Officer Bates believed that Appellant and the other man were engaging in the above-described money laundering activity. Appellant, who was wearing a grey and white zip-up hoodie, proceeded to ride away on his red bicycle down Evergreen Street, as he had periodically been doing during the surveillance period, and return to the corner to stand in front of the store.

While on the corner, Officer Bates saw a person later identified as Frank Wissler ("Wissler") pull to the curb in a white vehicle with his wife on the north side of the 1200 block of Derry Street. The pair exited the car and walked to the intersection of Derry and Evergreen Streets where [Wissler] spoke on his cellphone briefly. Seconds later, Officer Bates saw Appellant arrive to the location on his red bicycle. Wissler and Appellant walked over to the vehicle with their backs turned, interacted for a couple of seconds then, Appellant rode away. Wissler and his wife entered the car and also pulled away failing to use a turn signal at an intersection. Based on all of his observations of Appellant that day and his law enforcement experience, Officer Bates firmly believed that a drug transaction had just taken place between Wissler and Appellant.

In light of his observations and conclusions drawn therefrom, Officer Bates radioed to other officers in the area to conduct a

traffic stop of Wissler and to find and detain Appellant. When he radioed the other units, [Officer] Bates provided [] Appellant's physical description and direction of travel. Appellant rode away on Derry Street to 13th Street where he made a right turn going southbound.

Officers Anthony Fiore and Jon Fustine, also of the SCU, spotted Appellant as he fled while picking up speed. Officer [] Fiore [] received the radio call from Officer Bates that instructed him to detain the described individual for further investigation of a suspected hand-to-hand illegal drug transaction. He and Officer Fustine drove to the location and spotted the individual who he identified as Appellant riding his red bicycle south on 13th Street. Officer Fiore testified that he could clearly see him as he was only half a block away and Appellant matched the description.

Officer Fiore stated that Appellant had been riding the bike at a normal speed until he and Officer Fustine exited their vehicle, at which time he sped up and travelled east on Kittatinny Street, then turned south on Buckthorn Street. He did not comply with their demand to stop. Officer Fiore continued to pursue Appellant on foot for several hundred feet and eventually discovered that he had abandoned the bike. The Officers eventually located him on foot when he exited an alley between two houses at 314 and 316 South 14th Street. Appellant was detained at that location while Officer Bates continued his investigation.

While waiting, Officer Fiore searched the footpath taken by Appellant on his flight. He found a large quantity of money in a roll that was few inches thick totaling $482[.00]. Appellant claimed that the bundle of money was not his. When Officer Bates arrived on scene he searched Appellant and retrieved his cellphone and wallet which only contained $20[.00].

While Officers Fiore and Fustine were pursuing Appellant, Officer Donald Bender [], a K-9 officer assigned to the SCU, assisted Officer Bates by conducting a traffic stop of Wissler. He had received radio instructions from Bates that included a description of Wissler's car, the license plate number[,] and that the occupants were suspected to have been involved in an illegal narcotics transaction. Officer Bates testified that he had witnessed Wissler fail to use a turn signal when he left Derry

Street. Officer Bender located the vehicle and made contact with Wissler, the driver, and his passenger. When Officer Bender ran his name, he discovered that Wissler was wanted in California on a felony charge. Wissler was taken out of the car, detained[,] and [read his rights. A fellow officer], who was also on the scene of the traffic stop, observed a packet of suspected heroin on the seat when Wissler exited the vehicle. Wissler then admitted to having three more packets in the center console of the car and gave officers permission to search the vehicle.

Once officers radioed Bates that Wissler had been detained, [Officer Bates] proceeded to that location to continue his investigation of the suspected drug deal. Officer Bates also [read Wissler his rights]. During Officer Bates' questioning of Wissler he said a person named Benji had sold him some heroin. Wissler described Benji as a Hispanic male who was riding a red bike and wearing a white and grey hoodie. Wissler showed Officer Bates the number he called to contact Benji. Later, when [Officer Bates] recovered Appellant's cellphone, [Officer Bates] had Officer Fiore dial the number provided by Wissler and the call connected to Appellant's phone.

Trial Court Opinion, 3/25/16, at 2-7 (internal citations, footnotes, and honorifics omitted).

The procedural history of this case is as follows. On April 20, 2015, the Commonwealth charged Appellant via criminal information with possession with intent to deliver a controlled substance[1] and possession of drug paraphernalia.[2] On November 9, 2015, Appellant filed a motion to suppress. At the conclusion of a suppression hearing on November 30, 2015, the trial court denied Appellant's suppression motion.

---

[1] 35 P.S. § 780-113(a)(30).

[2] 35 P.S. § 780-113(a)(32).

- 4 -

On December 8, 2015, Appellant was convicted of both offenses. He was immediately sentenced to an aggregate term of 27 to 72 months' imprisonment. On December 16, 2015, Appellant filed a post-sentence motion addressing the fine imposed by the trial court. On December 28, 2015, the trial court granted Appellant's post-sentence motion. This timely appeal followed.[3]

Appellant presents two issues for our review:

1. Did not the [trial] court err in denying [Appellant's] motion to suppress when the police effected a seizure of [Appellant's] person under Article 1, Section 8, of the Pennsylvania Constitution without reasonable suspicion and when [Appellant's] subsequent flight and discarding of evidence is deemed not to constitute an abandonment under Article 1, Section 8, of the Pennsylvania Constitution?

2. Did not the [trial] court err in overruling [Appellant's] objection to the introduction of a hearsay statement from a non-testifying declarant implicating [Appellant] as the person who sold him illegal drugs when such statement did not qualify for admission under [Pennsylvania Rule of Evidence] 803(1) and when the introduction of such statement violated [Appellant's] constitutional right of confrontation?

Appellant's Brief at 5 (complete capitalization removed).

In his first issue, Appellant argues that the trial court erred in denying his suppression motion. "Once a motion to suppress evidence has been

_____

[3] On January 11, 2016 the trial court ordered Appellant to file a concise statement of errors complained of on appeal ("concise statement"). *See* Pa.R.A.P. 1925(b). On January 20, 2016, Appellant filed his concise statement. On March 25, 2016 the trial court issued its Rule 1925(a) opinion. Both of Appellant's issues were included in his concise statement.

filed, it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights." *Commonwealth v. Evans*, 2016 WL 7369120, *3 (Pa. Super. Dec. 20, 2016) (citation omitted). "Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Simonson*, 148 A.3d 792, 796 (Pa. Super. 2016) (citation omitted). "[O]ur scope of review is limited to the factual findings and legal conclusions of the [trial] court." *In re L.J.*, 79 A.3d 1073, 1080 (Pa. 2013) (citation omitted). "Because the Commonwealth prevailed before the [trial] court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." *Commonwealth v. Valdivia*, 145 A.3d 1156, 1159 (Pa. Super. 2016) (citation omitted). "Where the [trial] court's factual findings are supported by the record, we are bound by these findings and may reverse only if the [trial] court's legal conclusions are erroneous." *Commonwealth v. Palmer*, 145 A.3d 170, 173 (Pa. Super. 2016) (citation omitted).

Appellant contends that Officers Fiore and Fustine seized him when they exited the patrol vehicle. According to Appellant, Officers Fiore and Fustine, at that time, lacked the requisite reasonable suspicion to seize him.

Thus, Appellant argues that they unconstitutionally forced him to discard the currency that Officer Fiore later found on the ground. The Commonwealth, on the other hand, argues that Appellant was not seized until after he began fleeing. The Commonwealth also argues that Officers Fiore and Fustine had reasonable suspicion to detain Appellant in order to investigate whether he was engaged in illegal drug activity.

"The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from unreasonable searches and seizures[.]" ***Commonwealth v. Korn***, 139 A.3d 249, 258 (Pa. Super. 2016), *appeal denied*, 2016 WL 6107660 (Pa. Oct. 18, 2016) (citation omitted). "To safeguard these rights, courts require police to articulate the basis for their interaction with citizens in three increasingly intrusive situations." ***Commonwealth v. Clemens***, 66 A.3d 373, 378 (Pa. Super. 2013) (internal alteration, quotation marks, and citation omitted).

This Court has described the three types of police/citizen interactions, and the necessary justification for each, as follows:

> The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention[,]" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

***Commonwealth v. Stilo***, 138 A.3d 33, 36 (Pa. Super. 2016) (citation

omitted).

> Moreover:
>
> Under Pennsylvania law, any items abandoned by an individual under pursuit are considered fruits of a seizure. Those items may only be received in evidence when an officer, before giving chase, has at least the reasonable suspicion necessary for an investigatory stop. Stated another way, when one is unconstitutionally seized by the police, *i.e.* without reasonable suspicion or probable cause, any subsequent flight with the police in pursuit continues the seizure and any contraband discarded during the pursuit is considered a product of coercion and is not admissible against the individual.

***Commonwealth v. Taggart***, 997 A.2d 1189, 1193 (Pa. Super. 2010),

*appeal denied*, 17 A.3d 1254 (Pa. 2011).

> As this Court has explained:
>
> To establish grounds for reasonable suspicion, the officer must articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity. The question of whether reasonable suspicion existed at the time the officer conducted the stop must be answered by examining the totality of the circumstances to determine whether the officer who initiated the stop had a particularized and objective basis for suspecting the individual stopped. Therefore, the fundamental inquiry of a reviewing court must be an objective one, namely, whether the facts available to the officer at the moment of the stop warrant a person of reasonable caution in the belief that the action taken was appropriate.

***Commonwealth v. Postie***, 110 A.3d 1034, 1039–1040 (Pa. Super. 2015)

(internal alterations and citation omitted).

Even if we assume, contrary to the Commonwealth's opening position, that Appellant was seized prior to fleeing from Officers Fiore and Fustine, and not after he commenced evasive efforts, we conclude that the police possessed reasonable suspicion that Appellant was engaged in criminal activity. Appellant cites three cases in support of his argument that Officers Fiore and Fustine lacked reasonable suspicion to detain him. All three cases, however, are distinguishable from the case at bar.

In **Commonwealth v. Donaldson**, 786 A.2d 279 (Pa. Super. 2001), *appeal denied*, 800 A.2d 931 (Pa. 2002), the police officer did not witness a hand-to-hand transaction. **See id.** at 280. Instead, the police officer only witnessed individuals enter and exit a vehicle in a high-drug area. **See id.** This Court held that entering and exiting a vehicle in a high-drug area did not provide police reasonable suspicion to detain the driver of the vehicle. **See id.** at 284.

Similarly, in **Commonwealth v. Carter**, 779 A.2d 591 (Pa. Super. 2001), the police officer did not witness a hand-to-hand transaction. **See id.** at 592. Instead, police only witnessed an individual place his hand in his pocket while conversing with an individual in a vehicle in a high-drug area. **See id.** This Court held that placing one's hands in one's pocket while conversing with an individual in a high-drug area did not provide police with reasonable suspicion to detain an individual. **See id.** at 593-594.

- 9 -

Likewise, in **Commonwealth v. Tither**, 671 A.2d 1156 (Pa. 1996), the police officer did not witness a hand-to-hand transaction. **See id.** at 1157. Instead, police only witnessed an individual reach into a vehicle in a high-drug area. **See id.** Our Supreme Court held that reaching into a vehicle in a high-drug area did not provide police with reasonable suspicion to detain the driver of the vehicle. **See id.** at 1158-1159.

Instead, we find instructive this Court's decision in **Clemens**. In that case, an experienced police officer witnessed what he believed to be a hand-to-hand drug transaction between the defendant and an unknown individual in a high-drug area. **See Clemens**, 66 A.3d at 380. The defendant then left the scene of the hand-to-hand transaction. **See id.** This Court held that, "Given these specific and articulable facts . . . an objectively reasonable police officer would have reasonably suspected that [the defendant] sold narcotics to the unidentified man." **Id.** (internal quotation marks omitted).

Similarly, in **Commonwealth v. Daniels**, 999 A.3d 590 (Pa. Super. 2010), a police officer "witnessed [an individual] walk up to [the defendant's] car, reach through the window, and hand [the defendant] what appeared to be United States currency in exchange for a small item." **Id.** at 597 (citation omitted). The officer knew this to be a high-drug area. **Id.** (citation omitted). This Court held that any argument that these facts did

- 10 -

not provide the police officer reasonable suspicion that a drug transaction occurred was frivolous. *See id.*

In this case, Officer Bates, a police officer with extensive narcotics experience, witnessed what he believed to be a hand-to-hand drug transaction involving Appellant[4] and a separate narcotics transaction between Appellant and Wissler. Officer Bates also witnessed what he believed to be drug-related money laundering involving Appellant. From these facts, Officer Bates acquired specific and articulable facts establishing that Appellant engaged in illegal narcotics sales. Officer Bates then relayed his reasonable suspicion to Officers Fiore and Fustine. Thus, as Officers Fiore and Fustine had reasonable suspicion to detain Appellant, the currency discarded by Appellant was legally seized. Accordingly, the trial court properly denied Appellant's suppression motion.

In his second issue, Appellant argues that the trial court erred in admitting Wissler's statement to police that he bought drugs from an individual matching Appellant's description despite the fact that Wissler did

---

[4] Officer Bates testified that he was not 100% certain that he witnessed a drug transaction; however, based upon his experience he was very confident that the hand-to-hand transaction he witnessed was drug related. This was essentially the same testimony that this Court found sufficient to give police reasonable suspicion in *Clemens*. In *Clemens*, the police officer testified that he was not 100% certain he that he witnessed a drug transaction; however, based upon his experience he was very confident that the hand-to-hand transaction he witnessed was drug related. *See Clemens*, 66 A.3d at 380. Accordingly, any argument that Officer Bates' equivocation meant police lacked reasonable suspicion to pursue Appellant is without merit.

not testify at trial. When evaluating a trial court's ruling on the admission of evidence, "[o]ur task is to evaluate the trial court's decision for an abuse of discretion, and we may not disturb the trial court's ruling merely because we would have ruled differently." **Commonwealth v. Sitler**, 144 A.3d 156, 169 (Pa. Super. 2016) (*en banc*) (citation omitted).

The trial court admitted Wissler's statement under the present sense impression exception to the rule against hearsay. That exception provides that a hearsay statement is admissible if it is "describing or explaining an event or condition, made while or immediately after the declarant perceived it." Pa.R.Evid. 803(1). "The exception allows testimony concerning events observed by the declarant regardless of whether or not the declarant was excited. The statement must be made at the time of the event or so shortly thereafter that the declarant would be unlikely to have the opportunity to decide to make a false statement." **Bugosh v. Allen Refractories Co.**, 932 A.2d 901, 914 (Pa. Super. 2007), *appeal dismissed*, 971 A.2d 1228 (Pa. 2009).

Whether the challenged statement qualifies as a present sense impression requires us to decide if Wissler's declaration to Officer Bates came so shortly after the events in question that Wissler would have been unlikely to have had the opportunity to engage in reflective thought or conjure a falsehood. We find instructive this Court's decision in **Croyle v. Smith**, 918 A.2d 142 (Pa. Super. 2007). In **Croyle**, this Court found that a

statement given approximately ten minutes after a motorcycle accident was not a present sense impression because it was not given so shortly after the event that the declarant did not have the opportunity to decide to make a false statement. *See id.* at 150.

We also find instructive our Supreme Court's decision in *Commonwealth v. Wholaver*, 989 A.2d 883 (Pa. 2010). In *Wholaver*, the defendant made a statement to his brother approximately five to ten minutes after seeing his family's dead bodies. *Id.* at 906. Although our Supreme Court addressed the admission of the statement under the excited utterance exception to the rule against hearsay, its reasoning is applicable in the present sense impression context. Specifically, our Supreme Court stated that "five to ten minutes was sufficient time for [the defendant] to have engaged in reflective thought[.]" *Id.* at 907. As noted above, when an individual has sufficient time to engage in reflective thought prior to making a statement, that statement is not a present sense impression. *See Bugosh*, 932 A.2d at 914.

In the case *sub judice*, there was no testimony regarding the exact duration between when Wissler bought drugs from Appellant and when Appellant made the statement to police. The evidence, however, indicates that there was at least a five minute gap between the transaction and Wissler's statement. Specifically, Officer Bates radioed Officer Bender who then stopped Wissler. Officer Bender then checked Wissler's identity,

realized he had a warrant out of California, asked him to exit the vehicle, and then read Wissler his rights. Officer Bender then radioed Officer Bates who traveled to that location, and read Wissler his rights again. Only then did Wissler state he bought drugs off of an individual matching Appellant's description. It is nearly impossible that this chain of events occurred in less than five minutes. Accordingly, we conclude that the trial court erred in admitting Wissler's statement to police as a present sense impression.[5]

Having determined that the trial court erred in admitting Wissler's statement to Officer Bates, we next turn to whether that error was harmless. *See Commonwealth v. McClure*, 144 A.3d 970, 975–76 (Pa. Super. 2016) (citation omitted) ("In the event of an erroneous admission of evidence, a verdict can still be sustained if the error was harmless."). "Harmless error exists if . . . the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error so insignificant by comparison that the error could not have contributed to the verdict." *Commonwealth v. Mitchell*, 135 A.3d 1097, 1106 (Pa. Super. 2016), *appeal denied*, 145 A.3d 725 (Pa. 2016) (citations omitted). The Commonwealth bears the burden of proving that an error was harmless beyond a reasonable doubt. *See Commonwealth v. Konias*, 136 A.3d

---

[5] We also do not ascertain a basis in the record for admission of the statement under a different exception to the rule against hearsay.

1014, 1022 (Pa. Super. 2016), *appeal denied*, 145 A.3d 724 (Pa. 2016) (citation omitted).[6]

In this case, the properly admitted and uncontradicted evidence of guilt was overwhelming. Specifically, Officer Bates testified that he saw Appellant and Wissler engage in what he believed to be a drug transaction. Moreover, Officer Bates witnessed Appellant engage in what be believed to be a separate hand-to-hand drug transaction and a drug-related money laundering exchange. Appellant discarded most of the currency from these transactions as he fled police and that currency was recovered. Furthermore, police found heroin in Wissler's center console when he exited the vehicle. Three bags of that heroin were stamped "black death." N.T., 12/7/15, at 37. When police later obtained a search warrant for Appellant's phone, they discovered text messages sent by Appellant in which he stated that heroin stamped "black death" was selling like "hotcakes." *Id.* at 49. Leaving aside Wissler's improperly admitted statement, this evidence showed beyond a reasonable doubt that Appellant was guilty of possession with intent to deliver a controlled substance and possession of drug

---

[6] Because we apply the same standard for harmless error if evidence is admitted in contravention of the Pennsylvania Rules of Evidence as we do when evidence is admitted in contravention of the United States Constitution, we need not address Appellant's confrontation clause argument. *Cf. Davis v. Ayala*, 135 S.Ct. 2187, 2197 (2015) (explaining standard for harmless error analysis when evidence is admitted in contravention of United States Constitution).

paraphernalia. The prejudicial effect of Wissler's statement to police was thereby so insignificant by comparison that its erroneous admission could not have contributed to the verdict. Accordingly, the admission of Wissler's statement was harmless error and we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/14/2017