J-A31038-17

2018 PA Super 18

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| Appellant | : | |
| v. | : | |
| KAREEM THOMAS | : | No. 2164 EDA 2016 |

Appeal from the Order June 15, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0002442-2016

BEFORE: PANELLA, J., OLSON, J., and STEVENS, P.J.E.*

OPINION BY STEVENS, P.J.E.: **FILED FEBRUARY 01, 2018**

The Commonwealth of Pennsylvania appeals from the order of the Court of Common Pleas of Philadelphia County granting the pretrial suppression motion filed by Appellee Kareem Thomas. After careful review, we reverse and remand for further proceedings.

The relevant facts and procedural history are as follows: in the early morning hours of February 21, 2016, at approximately 1:20 a.m., Philadelphia Police Officer Owen Schaeffer was on patrol in the 12th District of Philadelphia when he received a radio report of a black male with a gun near 6400 Greenway Avenue. The report indicated that the male was dressed in a blue hooded sweatshirt and blue pants or blue jeans. Officer Schaeffer, who had been assigned to the 12th district for ten years, indicated that the reported location of 6400 Greenway Avenue was known as a high-crime area due to numerous homicides and shootings. In fact, Officer Schaeffer was aware that

_____

* Former Justice specially assigned to the Superior Court.

a shooting had taken place in this area just hours before and a homicide had been committed in this area just days earlier.

Officer Schaeffer and his partner, Officer Gresham, responded to the reported location in their marked police vehicle. When they approached the block just minutes after receiving the dispatch, Officer Schaeffer took notice of a black male, later identified as Appellee, walking eastbound on the north side of Greenway Avenue. Appellee was wearing a black hooded sweatshirt, a black jacket, and black pants. After Officer Schaeffer circled the block, he noticed Appellee on the steps of a house. The officers repeatedly circled the block four or five times, and each time, Appellee would reverse his direction and look back at the officers. *See* Notes of Testimony (N.T.), 6/15/16, at 10 ("[h]e just kept changing directions each time I went around the block. He changed directions and – when I passed him, I could see him looking back at me in my rear view mirror").

On the last time the officers circled the block, they observed Appellee cross the street and walk westbound towards 65th Street. Officer Schaeffer pulled his patrol car up next to Appellee, who had his hands in his pockets. When Officer Schaeffer asked to see Appellee's hands, Appellee refused to remove his hands from his pockets. Thereafter, Officer Schaeffer exited his patrol car, removed Appellee's hands from his pockets, and patted Appellee down. When Officer Schaeffer touched Appellant's right front jacket pocket, he immediately felt a gun. Officer Schaeffer recovered a firearm from Appellee's pocket and placed him under arrest.

Appellee was charged with several violations of the Uniforms Firearm Act (VUFA).[1]  Thereafter, Appellee filed a suppression motion, claiming he was subjected to an unreasonable search and seizure as the officers did not have reasonable suspicion to stop and frisk him.  On June 15, 2016, the lower court held a suppression hearing at which Officer Schaeffer testified.  At the conclusion of the hearing, the lower court granted Appellee's motion.

The Commonwealth filed this timely appeal, certifying therein that the suppression court's order would terminate or substantially handicap the prosecution.  **See** Pa.R.A.P. 311(d) (permitting prosecution to appeal from an interlocutory order if it certifies the order will terminate or substantially handicap the prosecution). The lower court ordered the Commonwealth to file a Pa.R.A.P. 1925(b) statement, and the Commonwealth timely complied.

The suppression court filed a responsive opinion explaining the reasons for its ruling. Specifically, the court determined that suppression was warranted as the radio call did not provide adequate basis for an investigatory stop, the officers did not observe Appellee participating in criminal activity, and the officers did not point to any evidence that would suggest Appellee was armed and dangerous.  The lower court emphasized that the officer's description of Appellee walking up and down the street was not indicative of criminal activity.

---

[1] 18 Pa.C.S.A. §§ 6105 (Possession of Firearm Prohibited); 6106 (Firearms not to be Carried Without a License); 6108 (Carrying Firearms in Philadelphia).

On appeal, the Commonwealth asserts that the suppression court erred in granting Appellee's suppression motion when (1) the officers responded to a report of a man with a gun in an area of high crime and gun related violence, (2) the officers observed Appellee suspiciously change direction and watch their patrol car each of the four or five times they circled the block, and (3) Appellee refused their request to remove his hands from his pocket.

In reviewing an appeal from an order granting a suppression motion, we are guided by the following standard:

> When the Commonwealth appeals a suppression order, we consider only the evidence from [Appellee's] witnesses together with the portion of the Commonwealth's evidence which is uncontroverted. Our standard of review is limited to determining whether the suppression court's factual findings are supported by the record, but we exercise *de novo* review over the suppression court's conclusions of law.

> *Commonwealth v. Snyder*, 599 Pa. 656, 963 A.2d 396, 400 (2009) (citations omitted). Further, "[a]ppellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress." *Commonwealth v. Stilo*, 138 A.3d 33, 35–36 (Pa.Super. 2016) (citation omitted). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." *Commonwealth v. Gallagher*, 896 A.2d 583, 585 (Pa.Super. 2006) (quotation marks and quotation omitted).

*Commonwealth v. Harris*, ___A.3d___, 2017 PA Super 402 (Pa.Super. Dec. 20, 2017)

In this case, the Commonwealth argues the trial court erred in finding the arresting officers lacked the requisite suspicion to justify their protective

frisk of Appellee. To evaluate the Commonwealth's challenge to the lower court's decision to suppress evidence obtained from the frisk, we begin our analysis by discussing whether the officers needed any level of requisite suspicion in their initial approach of Appellee.

The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from being subjected to unreasonable searches and seizures. **Commonwealth v. Lyles**, 626 Pa. 343, 350, 97 A.3d 298, 302 (2014). Search and seizure jurisprudence defines three levels of interaction between citizens and police officers and requires different levels of justification based upon the nature of the interaction. **Commonwealth v. Baldwin**, 147 A.3d 1200, 1202–1203 (Pa.Super. 2016).

> These categories include (1) a mere encounter, (2) an investigative detention, and (3) custodial detentions. The first of these, a "mere encounter" (or request for information), which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

**Id**. (citation omitted).

To determine whether and when a seizure has occurred, we employ "an objective test entailing a determination of whether, in view of all surrounding circumstances, a reasonable person would have believed that he was free to

leave." ***Commonwealth v. Strickler***, 563 Pa. 47, 58, 757 A.2d 884, 889 (Pa. 2000) (citations omitted).

> In evaluating the circumstances, the focus is directed toward whether, by means of physical force or show of authority, the citizen-subject's movement has in some way been restrained. In making this determination, courts must apply the totality-of-the-circumstances approach, with no single factor dictating the ultimate conclusion as to whether a seizure has occurred.

***Id.*** at 58-59, 757 A.2d at 890 (internal citation and footnotes omitted).

It is well-established that police officers may approach citizens and ask them questions without violating the Fourth Amendment:

> Both the United States and Pennsylvania Supreme Courts have held that the approach of a police officer followed by questioning does not constitute a seizure. ***Florida v. Bostick,*** 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) (police can approach people at random, ask questions, and seek consent to search) (collecting cases); ***Florida v. Royer,*** 460 U.S. 491, 497, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) ("law enforcement officers do not violate the Fourth Amendment by merely approaching an individual in the street or in another public place, by asking him is he is willing to answer some questions, [or] by putting questions to him if the person is willing to listen"); ***Commonwealth v. Smith,*** 575 Pa. 203, 836 A.2d 5, 11 (2003) ("the mere approach of police followed by police questioning ... does not amount to a seizure"); ***In re D.M.,*** 566 Pa. 445, 781 A.2d 1161, 1164 (2001) ("the police may approach anyone in a public place to talk to him, without any level of suspicion").

***Commonwealth v. Coleman***, 19 A.3d 1111, 1117 (Pa.Super. 2011).

In this case, Officer Schaeffer and Officer Gresham responded to a report of a black male with a gun in area of high crime and violence. Although Appellee did not match the exact description of the suspect provided in the radio call, the officers' suspicions were aroused when they observed Appellee

repeatedly change his direction and watch the officers closely as they continued to circle the block in their patrol car. Consistent with the aforementioned precedent, Officer Schaeffer did not seize Appellee when he pulled his patrol car up next to Appellee, who was standing on a public street.

Moreover, the interaction remained a mere encounter when Officer Schaeffer requested that Appellee remove his hands from his pockets. An officer is justified in insisting that a citizen not conceal his hands during an encounter with police; an officer may make this reasonable request to ensure his or her own protection in case that individual is armed.

> This Court has stated that if during a mere encounter, an individual on his own accord, puts his hands in his pocket, thereby creating a potential danger to the safety of a police officer, the officer may justifiably reach for his side arm and order the individual to stop and take his hand out of his pocket. Such reaction by a police officer does not elevate the mere encounter into an investigative detention because the officer's reaction was necessitated by the individual's conduct.

*Coleman*, 19 A.3d at 1117 (quoting *Commonwealth v. Carter*, 779 A.2d 591, 594 (Pa.Super. 2001) (noting that the fact that the officer asked the appellant to take his hands out of his pockets did not turn the encounter into a seizure)). *See also Commonwealth v. Blair*, 860 A.2d 567, 573 (Pa.Super. 2004) (finding that interaction remained a mere encounter when an officer approached a parked car and asked its occupants to show their hands).

We now evaluate the Commonwealth's argument that the trial court erred in finding Officer Schaeffer lacked reasonable suspicion to stop and frisk Appellee. The following principles guide our analysis:

> In the seminal case of **Terry v. Ohio**, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court indicated that police may stop and frisk a person where they had a reasonable suspicion that criminal activity is afoot. In order to determine whether the police had a reasonable suspicion, the totality of the circumstances—the whole picture—must be considered. **United States v. Cortez**, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). "Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." **Id**. at 417–18, 101 S.Ct. 690. Pennsylvania courts have consistently followed **Terry** in stop and frisk cases, including those in which the appellants allege protections pursuant to Article 1, Section 8 of the Pennsylvania Constitution.

**In re D.M.**, 566 Pa. 445, 449, 781 A.2d 1161, 1163 (2001).

Moreover, this Court has held that an officer may conduct a limited search, *i.e.,* a pat-down of the person stopped, if the officer possesses reasonable suspicion that the person stopped may be armed and dangerous. **Commonwealth v. Carter**, 105 A.3d 765, 768–69 (Pa.Super. 2014) (*en banc*) (citation omitted). "In assessing the reasonableness of the officer's decision to frisk, we do not consider his unparticularized suspicion or 'hunch,' but rather ... the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." **Commonwealth v. Zhahir**, 561 Pa. 545, 554, 751 A.2d 1153, 1158 (2000) (quoting **Terry,** 392 U.S. at 27, 88 S.Ct. at 1883). Further, "the court must be guided by common sense concerns that **give preference to the safety of the police officer** during

an encounter with a suspect where circumstances indicate that the suspect may have, or may be reaching for, a weapon." ***Commonwealth v. Stevenson***, 894 A.2d 759, 772 (Pa.Super. 2006) (citing ***Zhahir***, 561 Pa. at 555, 751 A.2d at 1158).

Appellee's refusal to comply with Officer Schaeffer's request to remove his hands from his pockets justified the frisk of his person for the protection of the officers, so that they could pursue their investigation without fear of violence. It was reasonable for Officer Schaeffer to infer that Appellee may have been armed and dangerous, given his refusal to show his hands and his evasive movements in response to police presence in an area specifically known for high levels of crime and violence. ***See also Zhahir***, 751 A.2d at 1157-58 (finding ***Terry*** frisk justified by the suspect's attempt to reach into his pocket in response to approaching officers which was "consistent with retrieval of a weapon"); ***Commonwealth v. Hall***, 713 A.2d 650, 653 (Pa.Super. 1998) (finding defendant's persistence in keeping his hand in his pocket after officer asked to see his hands escalated the mere encounter and justified a stop and frisk of his person), *rev'd on other grounds*, 771 A.2d 732.

We reject the lower court's rationale that the Commonwealth failed to show specific and articulable facts that Appellee was armed and dangerous as it characterized Appellee's movement in walking up and down the street as innocent behavior. This Court has held that "even in a case where one could say that the conduct of a person is **equally** consistent with innocent activity, the suppression court would not be foreclosed from concluding that reasonable

suspicion nevertheless existed. … [E]ven a combination of innocent facts, when taken together, may warrant further investigation." *Carter*, 105 A.3d at 772 (finding reasonable suspicion existed to stop and frisk the appellee, who was present in a high crime area, appeared to be concealing a weighted bulge in his pocket from police officers, and walked away multiple times when the officers' patrol car passed by).

In line with this reasoning, the conduct of the defendant in *Terry* could have similarly been characterized as innocent behavior. The officer in *Terry* was on patrol in downtown Cleveland at approximately 2:30 p.m., when he observed Terry and a companion, walking back and forth from a street corner, looking into a set of store windows, and then returning to converse with each other. The men repeated this course of conduct five or six times in ten to twelve minutes in an area known for shoplifting. As the officer suspected that the men were casing the store for a daylight robbery (which would likely involve the use of weapons), he stopped and frisked Terry and recovered a firearm from his pocket.

The High Court acknowledged that Terry was not prohibited from looking into the store windows, however, noted that when viewing the totality of the circumstances, each of the suspects' actions were "perhaps innocent in itself, but … taken together warranted further investigation." *Terry*, 392 U.S. at 22, 88 S. Ct. at 1881-82. Moreover, the *Terry* Court emphasized that "[i]t would have been poor police work indeed for an officer of 30 years' experience in the detection of thievery from stores in this same neighborhood to have failed

to investigate this behavior further." *Id*. at 23, 88 S. Ct. at 1881. Ultimately, the *Terry* Court reasoned that the officer was justified in stopping and frisking Terry as he reasonably believed that Terry was armed and presented a threat of danger to himself and to others.

Likewise, in this case, since we find the Commonwealth demonstrated that the officers had reasonable suspicion to seize Appellee and conduct a limited-*Terry* patdown based on their belief that he was armed and dangerous, we conclude that the lower court erred in granting Appellee's suppression motion. Accordingly, we reverse the suppression court's order and remand this case for further proceedings, consistent with this opinion.

Order reversed. Case remanded. Jurisdiction relinquished. Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/1/18