J-S69033-17

2018 PA Super 183

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| TAREEK ALQUAN HEMINGWAY | |
| | No. 684 WDA 2017 |

Appeal from the Order March 31, 2017
In the Court of Common Pleas of Blair County
Criminal Division at No(s): CP-07-CR-0002262-2016

BEFORE: BOWES, J., RANSOM, J., and STEVENS, P.J.E.*

OPINION BY RANSOM, J.:                                    **FILED JUNE 26, 2018**

Appellant, the Commonwealth of Pennsylvania, appeals from the order entered March 31, 2017, granting Appellee Tareek Alquan Hemingway's suppression motion. After careful review, we affirm.

We adopt the following statement of facts from the trial court opinion, which in turn is supported by the record. **See** Trial Court Op. (TCO), 3/30/2017, at 1-5. On October 8, 2016, at approximately 2:12 a.m., Altoona Police Department patrolmen Joseph Detwiler and Derek Tardive responded to a noise complaint "in a high crime area." No information or description was given regarding any person involved in the noise complaint.

---

* Former Justice specially assigned to the Superior Court.

At the location, officers observed Appellee and another man conversing with two women in a car. Appellee had his hand in his pocket. Although Appellee and his companion were not inside the building that was the address of the complaint, because officers were concerned that "if they responded to the noise complaint first, the men would not be there when they got outside," they approached Appellee. **See** Notes of Testimony (N.T.), 2/6/17, at 12. Officer Detwiler ordered Appellee to remove his hand from his pocket. Officer Tardive ordered Appellee to put his hands on his head and stated that he would be conducting a pat-down search.

Rather than comply, Appellee immediately fled on foot. Subsequent to a foot chase, the officers recovered Appellee's shoe and near the shoe, four bags of a white powdery substance, later identified as cocaine. Appellee was arrested and subsequently charged with possession with intent to deliver a controlled substance ("PWID"), resisting arrest, escape, and disorderly conduct.[1]

In November 2016, Appellee filed a suppression motion, arguing that police officers did not have reasonable suspicion to justify their initial attempt to stop and frisk Appellee based upon his mere presence in a high crime area and the fact that he had his hand in his pocket. In February 2017, the suppression court convened a hearing at which Officer Detwiler testified, and at which Officer Tardive's preliminary hearing testimony was read into the

---

[1] 35 P.S. § 780-113(a)(30); 18 Pa.C.S. §§ 5104, 5121, and 5503, respectively.

record. On March 17, 2017, the suppression court granted the order, finding that Appellee was subjected to an unlawful investigative detention as the officers lacked reasonable suspicion that criminal activity was afoot.

The Commonwealth timely appealed.[2] Both the Commonwealth and the court have complied with Pa.R.A.P. 1925(a)-(b).

On appeal, the Commonwealth raises the following issues for our review:

> 1. Whether the suppression court erred in concluding that Officers Detwiler and [Tardive], viewed from the standpoint of an objective reasonable police officer, did not possess reasonable suspicion that criminal activity may be afoot and that Appellee may be armed and dangerous.
>
> 2. Whether the suppression court erred in suppressing controlled substances that were not found pursuant to a search of defendant, but were discarded by Appellee before or during his struggle with police.

The Commonwealth's Brief at 3.

First, the Commonwealth contends that the court erred in concluding that officers did not possess reasonable suspicion that criminal activity may be afoot and that Appellant was armed and dangerous. *See* Commw. Brief at 7-8. The Commonwealth contends that the following facts support its

---

[2] In its notice of appeal, the Commonwealth certified that the suppression court's order granting Appellee's motion to suppress terminates or substantially handicaps the prosecution. *See* Pa.R.A.P. 311(d) (permitting interlocutory appeal where Commonwealth certifies with its notice of appeal that order terminates or substantially handicaps prosecution). Thus, the appeal is properly before us. *See Commonwealth v. Ivy*, 146 A.3d 241, 244 n.2 (Pa. Super. 2016).

argument and subsequent investigatory stop: 1) that the time of the encounter was 2:00 a.m.; 2) the area was a high crime area; 3) Appellee's interactions with the vehicle were consistent with drug transactions; 4) Appellee "shoved his hand into his pocket when he made eye contact with the officers." *Id.* at 9-10.

When reviewing the grant of a suppression motion,

we must determine whether the record supports the trial court's factual findings and whether the legal conclusions drawn from those facts are correct. We may only consider evidence presented at the suppression hearing. In addition, because the defendant prevailed on this issue before the suppression court, we consider only the defendant's evidence and so much of the Commonwealth's evidence as remains uncontradicted when read in the context of the record as a whole. We may reverse only if the legal conclusions drawn from the facts are in error.

*Commonwealth v. Haines*, 168 A.3d 231, 234 (Pa. Super. 2017) (internal citations and quotations omitted).

We further note that

[t]here are three types of encounters between law enforcement officials and private citizens. A "mere encounter" need not be supported by any level of suspicion but carries no official compulsion to stop or respond. An "investigative detention" must be supported by reasonable suspicion and subjects the suspect to a stop and a period of detention, but it does not have the coercive conditions that would constitute an arrest. The courts determine whether reasonable suspicion exists by examining the totality of the circumstances. An arrest, or "custodial detention," must be supported by probable cause.

*In re J.G.*, 145 A.3d 1179, 1185 (Pa. Super. 2016).

Here, we must determine 1) the type of encounter and corresponding level of suspicion required to support that encounter; and 2) whether the facts supported said level of suspicion. *Id.* at 1185.

Our Court has previously observed that

[t]o determine whether a mere encounter rises to the level of an investigatory detention, we must discern whether, as a matter of law, the police conducted a seizure of the person involved. To decide whether a seizure has occurred, a court must consider all the circumstances surrounding the encounter to determine whether the demeanor and conduct of the police would have communicated to a reasonable person that he or she was not free to decline the officer's request or otherwise terminate the encounter. Thus, the focal point of our inquiry must be whether, considering the circumstances surrounding the incident, a reasonable person innocent of any crime, would have thought he was being restrained had he been in the defendant's shoes.

*Commonwealth v. Reppert*, 814 A.2d 1196, 1201–1202 (Pa. Super. 2002) (citations omitted).

As noted, a mere encounter is a "request for information." It need not be supported by any level of suspicion and, accordingly, carries no official compulsion to stop and respond. *See Commonwealth v. Baldwin*, 147 A.2d 1200, 1202-03 (Pa. Super. 2016). However, in order to conduct a pat-down of a person, police must have reasonable suspicion:

A police officer is entitled to conduct a limited search of an individual to detect weapons if the officer observes unusual and suspicious conduct on the part of the individual which leads the officer to reasonably believe that criminal activity is afoot and that the person may be armed and dangerous.

*Commonwealth v. Martinez*, 588 A.2d 513, 514 (Pa. Super. 1991) (internal citations and quotations omitted) (citing *Terry v. Ohio*, 88 S. Ct. 1868 (1968)).

There is some precedent regarding police requests that defendants remove their hands from their pockets, and the level of encounter resulting from such orders. However, the conclusion we may draw from such precedent is that it is a fact-specific inquiry, and, as will be discussed, *infra*, partially dependent on the timing of the request.

In *Martinez*, two police officers in an unmarked vehicle pulled up alongside the defendant, requested that she come over to them, turn around, take her hands from her jacket, and put them on the car. *See Martinez*, 588 A.2d at 515. The officers exited the vehicle and approached Martinez from either side, preventing her from leaving. *Id.* The *Martinez* Court thus concluded that she had been seized for Fourth Amendment purposes and that reasonable suspicion was necessary to justify the stop. *Id.* at 515-16.

This Court has previously stated that

> if *during* a mere encounter, an individual on his own accord, puts his hands in his pocket, thereby creating a potential danger to the safety of a police officer, the officer may justifiably reach for his side arm and order the individual to stop and take his hand out of his pocket. Such reaction by a police officer does not elevate the mere encounter into an investigative detention because the officer's reaction was necessitated by the individual's conduct.

*See Commonwealth v. Carter*, 779 A.2d 591, 594 (Pa. Super. 2001) (finding that the defendant's presence in a car with other individuals in a high

crime area did not support reasonable suspicion that defendant was engaged in criminal activity) (internal citations and quotations omitted) (emphasis added).

Our Supreme Court has recognized that when police officers are investigating an allegation of narcotics trafficking in a high crime area, they are justified in asking a defendant who matches a police description to remove his hands from his pockets. *See Commonwealth v. Zhahir*, 751 A.2d 1153, 1158 (Pa. 2000) (noting that defendant's suspicious behavior appeared to have been in response to police presence and that officers were justified in requesting that he remove his hands for their own safety).

Similarly, in *Commonwealth v. Coleman*, police officers were dispatched to a robbery in progress involving two black males wearing green hooded jackets covered by black coats. *See Coleman*, 19 A.3d 1111, 1114 (Pa. Super. 2011). Upon observing Coleman, who matched the flash description, the officer inquired whether he had a gun. *Id.* In response, Coleman fumbled with his hands in his pockets. *Id.* The officer then ordered Coleman to take his hands out of his pockets and, upon his refusal, bought Coleman to a police van, where two knives were recovered from his pockets. *Id.* Our Court concluded that the officer's request did not constitute a seizure and that the combination of 1) the description of the robber and 2) Coleman's refusal to remove his hands from his pockets was sufficient to justify an investigative detention and protective frisk. *Id.* at 1117.

However, a police officer is not permitted to create a dangerous situation and then use the self-created danger as the basis for escalating an encounter into a seizure. *See Carter*, 779 A.2d at 594 (noting that in telling suspect to put his hands in his pockets, then ordering him to take them out, police officer manufactured danger himself).

In the instant case, the initial interaction between officers and Appellee was not a mere encounter. As noted above, a mere encounter constitutes a *request for information* but carries no official compulsion to stop and respond. *See Baldwin*, 147 A.2d at 1202-03. When in *response* to police questioning, a person puts his hands in his pockets and is ordered to remove them, the encounter does not escalate to a seizure. *See Coleman*, 19 A.3d at 1116-17.

In the instant case, Appellee already had his hands in his pockets when the officers initiated the encounter, contrary to the Commonwealth's characterization in its brief. *See* N.T., 2/6/17, at 10. Officer Detwiler did not ask whether Appellee was armed or, indeed, ask him for any information at all. The interaction commenced with Officer Detwiler's command that Appellee remove his hands from his pocket. Thus, the initial interaction was not a "mere encounter," but was, instead, an investigative detention that must be supported by reasonable suspicion. *Baldwin*, 147 A.2d at 1203; *see also Carter*, 779 A.2d at 594.

Based upon the facts, *i.e.*, Appellee's actions of speaking to a woman on the street in a high crime area with his hands in his pockets, we discern no

reasonable suspicion sufficient for such a detention. **See Carter**, 779 A.2d at 594-95. Thus, Officer Detwiler's command was improper. Any potential danger in the interaction initiated by police was manufactured by Officer Detwiler himself. **See Carter**, 779 A.2d at 594.

Here, the Commonwealth cites to no cases to support its specific proposition and instead cites generally to the case law justifying **Terry** stops. **See** Commonwealth's Brief at 9. Even assuming, *arguendo*, that the interaction was a mere encounter, much of the precedent concerning similar situations does not support the Commonwealth's position.

For example, in **Commonwealth v. Hall**, 713 A.2d 650, 653 (Pa. Super. 1998), *rev'd on other grounds*, 771 A.2d 1232 (Pa. 2001), this Court did not find that the officer's request that the defendant remove his hands from his pockets constituted a seizure; however, the defendant's subsequent refusal to comply escalated the encounter into one where the totality of the circumstances justified a stop and frisk. **Id.** However, in **Hall**, the defendant was the one to initiate contact with the police, whereas in the instant case, the police initiated contact with the defendant. **Id.** at 652-53.

Neither does **Coleman** support this position. The Commonwealth asserts that Appellee's refusal to comply with orders, along with the fact that officers encountered Appellee at 2:00 a.m. in a high crime area, demonstrated the justified belief that Appellee was armed and dangerous. However, **Coleman** is easily distinguishable on its facts.

The instant case is distinguishable in several important aspects. First, *Coleman* involved a violent crime in progress, making it more likely that the suspects may have been armed. In the instant matter, police were responding to a noise complaint. Second, in *Coleman*, police had a specific description of the clothing the suspects wore, and Coleman himself was wearing clothing that matched that description. There was no such description of Appellee in this case. Third, in *Coleman*, Coleman put his hands in his pockets *after* police initiated the encounter. Here, as noted above, it was the fact that Appellee's hands were in his pockets that caused Officer Detwiler to initiate the encounter.

Similarly, *Commonwealth v. Thomas*, 179 A.3d 77 (Pa. Super. 2018), is distinguishable. In *Thomas*, police received a report at 1:20 a.m. of a black male with a gun, dressed in a blue hooded sweatshirt and blue pants or jeans. *Id.* at 80. When officers arrived at the location provided in the report, they saw a black male, later identified as the defendant, wearing a black hooded sweatshirt, black jacket, and black pants, and walking down the street. *Id.* After circling the block, the officers noticed the defendant sitting on a stoop. *Id.* As the officers circled the block four or five times, they noticed the defendant watching them, reversing his direction away from them, and looking again. *Id.* By the time the officers stopped the defendant, he had his hands in his pockets and refused to remove them when ordered. *Id.* Officers patted him down, and felt a gun in his pockets. *Id.*

The *Thomas* panel characterized this interaction as a mere encounter and noted that the defendant was not seized when officers asked him to remove his hands from his pockets. *Id.* at 82-83. In support, the panel quoted *Coleman* to note that such a reaction by a police officer does not elevate the mere encounter into an investigative detention because the reaction was necessitated by the individual's conduct. *Id.* (quoting *Coleman*, 19 A.3d at 1117).

The instant case is again distinguishable on the facts. First, the officers in *Thomas* had a description of the suspect, namely, a black male wearing a dark hooded sweatshirt and jeans. *Id.* at 80. Although the description of the clothing was not exact, it was reasonably close given the late hour. In the instant matter, there was no description of the suspect at all: not race, not gender, not clothing. Second, the report in *Thomas* was of a man with a gun, a matter in which officers would reasonably fear for their safety upon seeing a man with his hands in his pockets. *Id.* at 80. In the instant case, officers were responding to a noise complaint, with no reports of weapons. Further, the individual's conduct did not necessitate the officer's reaction: Appellee was speaking to two women, with his hands in his pockets. In contrast, the *Thomas* defendant behaved suspiciously by appearing to attempt to evade the police before he was stopped. *Id.* at 80-83.

Accordingly, *Thomas* and *Coleman* do not affect our analysis and conclusion that the encounter in the instant case was an investigative detention which was initiated without reasonable suspicion. *Baldwin*, 147

A.2d at 1203; **see also Carter**, 779 A.2d at 594; **Coleman**, 19 A.3d at 1117; **Thomas**, 179 A.3d at 80-83.

Here, the police initiated this interaction without reasonable suspicion. **See Carter**, 779 A.2d at 594. Whatever happened after was of no moment, as the critical point in the interaction was Officer Detwiler's improper command.[3] Accordingly, the suppression court did not err in granting Appellee's motion, and we affirm.

Order affirmed.

Judge Bowes joins this opinion and files a Concurring Opinion.

President Judge Emeritus Stevens files a Dissenting Opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/26/2018

---

[3] Accordingly, the Commonwealth's second issue – that the court erred in suppressing items discarded as Appellee ran – is moot based upon our disposition of the first issue.