**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| RASHEED BOND | : | |
| | : | |
| Appellant | : | No. 652 MDA 2019 |

Appeal from the Judgment of Sentence Entered October 31, 2018
In the Court of Common Pleas of Lycoming County
Criminal Division at No(s):  CP-41-CR-0000467-2016

BEFORE:   KUNSELMAN, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KING, J.:                                       **FILED JULY 02, 2020**

Appellant, Rasheed Bond, appeals from the judgment of sentence entered in the Lycoming County Court of Common Pleas, following his bench trial convictions for possession of a controlled substance, possession of a controlled substance with intent to deliver ("PWID"), possession of a small amount of marijuana, and possession of drug paraphernalia.[1]  We affirm.

The relevant facts and procedural history of this case are as follows.

> Officer Derr testified that at approximately 7:14 p.m. on February 8, 2016, he was on duty in full uniform, alone, and in a marked patrol unit.  As he drove through the parking lot of the convenience store located at the intersection of 6th Avenue and High Street, he observed a sedan with heavily tinted windows.  He continued through the parking lot and positioned his vehicle on 6th Avenue about 80 to 100 yards

---

[*] Former Justice specially assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(16), (30), (31), and (32), respectively.

away. He could not see the driver of the vehicle and suspected the driver was inside the convenience store.

When the vehicle pulled out of the parking lot, the driver did not use his turn signal before he drove onto 6th Avenue. At the time, Officer Derr believed the driver had committed a turn signal violation, and he was certain that the window tint was a violation. As the vehicle drove on 6th Avenue, Officer Derr quickly caught up to it. The vehicle only traveled on 6th Avenue for a short distance before the driver pulled the vehicle over to the curb as if to park. Officer Derr then activated his lights to conduct a traffic stop for the window tint and failure to use a turn signal. The tint was so dark that he could not see anything inside the vehicle. From only ten feet behind the driver's door, he could not see through the side window.[1]

> [1] Subsequent to [Appellant's] preliminary hearing, Officer Derr learned that [Appellant's] failure to use a turn signal when he exited the parking lot was not a traffic violation.

Officer Derr approached the vehicle and made contact with the driver, [Appellant]. [Appellant] seemed "extremely nervous." He talked a lot and browsed all areas of the vehicle with his hands and eyes. He was "in and out of every console and pocket." Officer Derr asked [Appellant] if there were any drugs or weapons in the vehicle. He also asked [Appellant] if there was any "weed" in the car or if he had smoked weed. [Appellant] said th[at] he had smoked weed within an hour of driving.

Officer Derr noticed cell phones all over the car. There were phones on the floor, in the console, in the glove box and in the door pockets. Officer Derr also noticed cash randomly placed in those locations. Officer Derr testified that [Appellant] did not have a good answer regarding why the phones and the cash were throughout the vehicle. Instead, [Appellant] became silent and put his head down. Officer Derr asked for [Appellant's] license, registration and

insurance.[2]    [Appellant] provided an ID card, and he showed Officer Derr his insurance card on his phone, but he did not provide a registration card.  Officer Derr checked on the status of [Appellant's] license and whether there were any warrants for his arrest.  There were no warrants, but [Appellant's] operating privilege was suspended.

Officer Derr testified that, in light of [Appellant's] statement that he had smoked weed within an hour of driving, he decided to conduct field sobriety tests to determine if [Appellant] was driving under the influence of marijuana.  Officer Derr admitted he had "no idea" that [Appellant] could be under the influence prior to asking him about possessing or smoking marijuana.

Although he readily admitted that he did not believe [Appellant] was armed and dangerous, Officer Derr removed [Appellant] from the vehicle and conducted a "pat down" of [Appellant] for weapons because it was his practice to do so prior to conducting field sobriety tests.  [Appellant] did not threaten Officer Derr or make any movements toward Officer Derr or his weapon, and Officer Derr did not see any bulges or anything that looked like a weapon in the vehicle or on [Appellant's] person.  Furthermore, by the time Officer Derr removed [Appellant] from the vehicle and conducted the pat down, other officers had arrived and surrounded them.

During the pat down, Officer Derr felt the sharp edge of Ziploc bags bundled together, which he immediately recognized as narcotics packaging, in [Appellant's] groin area.   Officer Derr immediately took [Appellant] into custody and placed him in the back of his patrol car.  He shone his flashlight around in the back seat and floor of his patrol car.  He told [Appellant] that he had searched his patrol car prior to the start of his shift, there was nothing in the back of his vehicle, and he would know that anything

_____

2 Despite the sequence of events set forth in the trial court opinion, Officer Derr testified that he requested Appellant's license and vehicle information and observed the cellphones and cash before asking whether Appellant possessed or used any drugs.  (*See* N.T. Suppression Hearing, 1/23/17, at 28-30).

found in there was [Appellant's]. Shortly thereafter, [Appellant] summoned Officer Derr back to the vehicle. [Appellant] told Officer Derr that the package was sliding down his leg and he asked Officer Derr to remove it. Officer Derr opened the "fly" of [Appellant's] pants and removed a foil Back Woods cigar package, which contained marijuana. Officer Derr [later] observed seven bundles of heroin inside a plastic sandwich bag on the rear passenger floor board of his patrol car.

Officer Derr searched [Appellant's] vehicle and discovered a total of eight cell phones and $348.

Officer Derr also testified that 6th Avenue and High Street was a "high crime" area. He indicated that he was involved in at least a dozen narcotics investigations in that area. He also noted there were several robberies, weapon offenses and assaults in that area as well. He referred to Commonwealth's Exhibit 1, which depicted the UCR reported crimes within 1000 feet of 6th Avenue and High Street.

[Appellant] was charged with possession with intent to deliver (heroin), possession of a controlled substance (heroin), possession of a controlled substance (marijuana), and possession of drug paraphernalia.

(Suppression Court Opinion, filed May 31, 2017, at 1-4).

On May 25, 2016, Appellant filed a motion to suppress all evidence obtained following the vehicle stop. Specifically, Appellant argued: (1) Officer Derr lacked probable cause to conduct a vehicle stop; (2) Officer Derr made an illegal arrest; and (3) Officer Derr failed to provide **Miranda**[3] warnings. The court held the suppression hearing on January 23, 2017, and it denied Appellant's motion on May 31, 2017.

---

[3] **Miranda v. Arizona**, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Following a bench trial, the court found Appellant guilty of PWID and related offenses. On October 31, 2018, the court sentenced Appellant to an aggregate term of twelve and one-half (12½) months to three (3) years' imprisonment followed by one year of probation. Appellant timely filed post-sentence motions on November 8, 2018. In his motions, Appellant requested judgment of acquittal or a new trial, as well as modification of his sentence. The court denied the post-sentence motions on March 25, 2019.

On April 22, 2019, Appellant timely filed the instant notice of appeal.[4] On May 2, 2019, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant timely filed his Rule 1925(b) statement on May 21, 2019.

---

[4] Trial courts have 120 days to decide a post-sentence motion before it is deemed denied by operation of law. Pa.R.Crim.P. 720(B)(3)(a). After 120 days, the clerk of courts shall enter an order deeming the motion denied on behalf of the trial court and serve copies on the parties. Pa.R.Crim.P. 720(B)(3)(c). Thereafter, a notice of appeal shall be filed within thirty days of the entry of the order denying the motion by operation of law. Pa.R.Crim.P. 720(A)(2)(b). Here, the trial court's 120-day period to decide Appellant's post-sentence motions expired on March 8, 2019. However, the clerk of courts did not enter an order deeming the post-sentence motions denied by operation of law. Ultimately, the court ruled on the motions on March 25, 2019. Under these circumstances, the clerk of court's failure to enter an order deeming the post-sentence motions denied by operation of law constitutes a court breakdown. *See Commonwealth v. Patterson*, 940 A.2d 493, 499 (Pa.Super. 2007), *appeal denied*, 599 Pa. 691, 960 A.2d 838 (2008) (explaining that failure to enter order notifying appellant that post-sentence motion was denied by operation of law constitutes breakdown in processes of court, which excuses otherwise untimely notice of appeal). Accordingly, we consider the notice of appeal timely filed.

Appellant raises one issue on appeal:

> Did the [trial] court err by failing to suppress evidence seized following police searching [Appellant's] vehicle after a stop for failure to use a turn signal leaving a parking lot and for dark window tint?

(Appellant's Brief at 7).

Appellant submits a police officer must possess probable cause to support a motor vehicle stop premised on excessive window tint, because this type of violation is readily apparent and does not require further investigation. Appellant insists Officer Derr did not possess probable cause in the instant case, in light of certain discrepancies between the officer's testimony from the preliminary and suppression hearings.[5]  In light of these discrepancies, Appellant insists Officer Derr's suppression hearing testimony was incredible. On this basis, Appellant concludes the court should have suppressed all evidence obtained as a result of the stop.  We disagree.

In reviewing the trial court's suppression ruling, we are guided by the following principles:

> The standard and scope of review for a challenge to the denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.  When reviewing the rulings of a suppression court, [the appellate court] considers only the evidence of the prosecution and so

---

[5] Specifically, Appellant emphasizes Officer Derr's preliminary hearing testimony that he stopped Appellant due to excessive window tint **and** failing to use a turn signal when exiting the parking lot.  Also at the preliminary hearing, Officer Derr did not conclusively state that the amount of tint on Appellant's windows constituted a Motor Vehicle Code violation.

much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. When the record supports the findings of the suppression court, [the court is] bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

***Commonwealth v. Griffin***, 116 A.3d 1139, 1142 (Pa.Super. 2015) (quoting

***Commonwealth v. Johnson***, 33 A.3d 122, 125-26 (Pa.Super. 2011)). "It is

within the suppression court's sole province as factfinder to pass on the

credibility of witnesses and the weight to be given [to] their testimony."

***Commonwealth v. Thomas***, 179 A.3d 77, 81 (Pa.Super. 2018).

Our analysis of the quantum of cause required for a traffic stop begins

with the Motor Vehicle Code, which provides:

### § 6308. Investigation by police officers

*   *   *

**(b)  Authority of police officer.—**Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has **reasonable suspicion** that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S.A. § 6308(b) (emphasis added).

"[D]espite subsection 6308(b)'s reasonable suspicion standard, some

offenses, by their very nature, require a police officer to possess probable

cause before he or she may conduct a traffic stop." ***Commonwealth v.***

*Ibrahim*, 127 A.3d 819, 823 (Pa.Super. 2015), *appeal denied*, 635 Pa. 771, 138 A.3d 3 (2016). "For a stop based on [an] observed violation of the Vehicle Code or otherwise non-investigable offense, an officer must have probable cause to make a constitutional vehicle stop." *Commonwealth v. Harris*, 176 A.3d 1009, 1019 (Pa.Super. 2017). *See also Commonwealth v. Feczko*, 10 A.3d 1285, 1291 (Pa.Super. 2010), *appeal denied*, 611 Pa. 650, 25 A.3d 327 (2011) (stating mere reasonable suspicion will not justify vehicle stop when driver's detention cannot serve investigatory purpose relevant to suspected violation).

Additionally, the Motor Vehicle Code provision governing window tint prohibits persons from driving "any motor vehicle with any sun screening device or other material which does not permit a person to see or view the inside of the vehicle through the windshield, side wing or side window of the vehicle." 75 Pa.C.S.A. § 4524(e)(1). "Tint is illegal if, from point of view of the officer, he or she is unable to see inside of a vehicle through the windshield, side wing, or side window." *Commonwealth v. Cartagena*, 63 A.3d 294, 305 n.26 (Pa.Super. 2013) (*en banc*), *appeal denied*, 620 Pa. 728, 70 A.3d 808 (2013). *See also Commonwealth v. Brubaker*, 5 A.3d 261, 265-66 (Pa.Super. 2010) (holding Commonwealth presented insufficient evidence to support conviction under Section 4524(e)(1) where officer testified he could see into defendant's vehicle). This Court has also held that an officer's observation of a vehicle's darkly tinted windows provides sufficient

probable cause to initiate a traffic stop. **See Harris, supra** at 1019.

Instantly, Officer Derr testified that the windows on Appellant's vehicle "were tinted so darkly that you could see nothing through them." (N.T. Suppression Hearing at 10). After observing Appellant's tinted windows, Officer Derr activated the lights on his vehicle to conduct a traffic stop. (**Id.** at 25). Significantly, the trial court credited Officer Derr's testimony regarding the amount of window tint. (**See** Suppression Court Opinion at 5). Regardless of any discrepancies between the officer's statements at the preliminary and suppression hearings, the suppression record supports the court's finding that Officer Derr's observations yielded probable cause for the vehicle stop.[6] **See Cartagena, supra**; **Harris, supra**. Because the trial court's factual findings are supported by the record, we affirm. **See Griffin, supra**.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/2/2020

---

[6] To the extent Appellant complains about the validity of Officer Derr's explanation for the discrepancies in his testimony, it is within the suppression court's sole province as factfinder to pass on the credibility of witnesses. **See Thomas, supra**.