J-S28044-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MONDALE ALONZO THOMAS | : | |
| | : | |
| Appellant | : | No. 1061 WDA 2022 |

Appeal from the Judgment of Sentence Entered August 11, 2022
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0000358-2022

BEFORE:   PANELLA, P.J., OLSON, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                **FILED: September 12, 2023**

Appellant Mondale Alonzo Thomas appeals from the judgment of sentence entered on August 11, 2022, in the Allegheny County Court of Common Pleas. We affirm.

The relevant facts[1] and procedural history are as follows: On January 3, 2022, police detectives stopped a Chevy Malibu with dark tinted windows traveling at speeds of 40 to 50 MPH in a posted 25 MPH zone. N.T. at 6. The vehicle was being driven by the Appellant and there were two other occupants. N.T. at 7. Based on the traffic violation, the detectives initiated a traffic stop and immediately observed the rear passenger-side passenger bend his upper

_____

[*] Former Justice specially assigned to the Superior Court.

[1] The parties stipulated to the facts contained in the Affidavit of Probable Cause and to the testimony presented at the hearing on Appellant's suppression motion for the purpose of trial testimony in the non-jury trial.

torso and reach toward the rear floorboard, return to an upright position, and then reach toward the right side of his person. N.T. at 8. Fearing that the passenger was attempting to conceal or retrieve a weapon, detectives quickly removed him from the vehicle and performed a **Terry**[2] pat down, which uncovered no weapon. N.T. at 8-9.

During the initial interaction with the vehicle occupants for the traffic violation, in addition to noticing the back passenger's movements, the detectives observed the driver, Appellant, acting nervously, and the detectives smelled the strong odor of fresh marijuana. Upon discovering that the front passenger, Ryan Stanton, was the owner of the vehicle, the detectives spoke with the front passenger and sought consent to search the vehicle. N.T. at 10. Prior to obtaining consent from the vehicle's owner, Detectives asked Appellant to exit the driver's seat. As Appellant complied, detectives observed him clench his elbows towards his waistline in a hunch-like fashion and noticed a large bulge in his sweatshirt. N.T. at 10, 12. Based on this unusual body language, the detectives believed Appellant was attempting to conceal an item in his waistband. N.T. at 10-11.

When Detective Stegena asked Appellant if he had any weapons, Appellant said, "No." N.T. at 13. The detectives described Appellant's physical posture as "threatening" because Appellant kept his arms tucked in and in a

---

[2] **Terry v. Ohio**, 392 U.S. 1 (1968).

hunched over position, and Detective Maloney ordered Appellant to "put your arms down." N.T. at 13. When Appellant did so, Detective Maloney at that moment observed the barrel of a firearm visible from Appellant's front pocket of his hooded sweatshirt. Appellant was patted down, and the loaded firearm was seized. Detective Stegena knew Appellant from a prior incident involving firearms and reasonably suspected that Appellant did not have a permit to carry. Written consent was obtained from the vehicle owner to search the entire vehicle which revealed a small bag of marijuana. The vehicle owner and the other two occupants were released from the scene without incident while Appellant was transported to police headquarters. A search of Appellant's person at headquarters revealed a small bag of marijuana. N.T. at 14.

Appellant was charged with a firearms violation. Thereafter, Appellant filed a suppression motion, claiming he was subjected to an unreasonable search and seizure as the detectives did not have reasonable suspicion to stop and frisk him. On July 13, 2022, the lower court held a suppression hearing at which two of the detectives who were at the scene testified. At the conclusion of the hearing, the lower court denied Appellant's suppression motion and immediately proceeded to a non-jury trial. At the conclusion of that proceeding, Appellant was convicted of the firearms violation and was sentenced on August 11, 2022, to serve a prison term of 18 to 48 months. This appeal followed.

The trial court filed an opinion and determined that reasonable suspicion existed for the pat-down of Appellant's person because the detectives observed (1) the rear passenger engaged in movements that led officers to believe the rear passenger may have been obtaining or concealing a firearm, (2) the Appellant clenched his elbows against his torso and leaned forward which led officers to believe he was trying to conceal a weapon, and (3) the smell of marijuana.[3] Additionally, Detective Stegena knew Appellant from a prior incident involving firearms, and the firearm was discovered before the pat-down was conducted right after Appellant exited the vehicle. Tr. Ct. Op. at 6-7.

On appeal, Appellant's sole claim is that the trial court erred in denying Appellant's suppression motion when the detectives ordered him to stand fully upright, thereby exposing the firearm. We review a trial court's denial of a suppression motion under the following standard:

> [o]ur standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may

---

[3] This Court recognizes based on the evidence contained in the record that the nature of the marijuana was *fresh* marijuana and not *burnt* marijuana, as the trial court had stated in its opinion. Tr. Ct. Op. at 7. However, the marijuana odor observed by the officers is irrelevant in this case.

- 4 -

reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. Johnson*, 146 A.3d 1271, 1273 (Pa. Super. 2016) (citation omitted).

Specifically, Appellant concedes that it was permissible to stop the vehicle being driven by him because it was traveling over the speed limit, but claims that the officers needed something more in order to detain him beyond that point—and that neither the smell of fresh marijuana, nor the rear passenger's body movements, nor Appellant's "weird" posture was enough to order Appellant out of the car for a pat-down. Appellant's Br. at 12, 13-14.

The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from being subjected to unreasonable searches and seizures. *Commonwealth v. Lyles*, 626 Pa. 343, 350, 97 A.3d 298, 302 (2014). Search and seizure jurisprudence defines three levels of interaction between citizens and police officers and requires different levels of justification based upon the nature of the interaction.

The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period

of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

***Commonwealth v. Way***, 238 A.3d 515, 518-19 (Pa. Super. 2020) (quoting

***Commonwealth v. Downey***, 39 A.3d 401, 405 (Pa. Super. 2012) (citation

omitted)).

This case involves an investigative detention because the detectives initiated a forcible stop of the vehicle Appellant was driving. It is well established that a forcible stop of a motor vehicle by the police constitutes a second-level seizure, or "investigative detention," which must be supported by reasonable suspicion that criminal activity is afoot. ***Commonwealth v. Clinton***, 905 A.2d 1026, 1030 (Pa. Super. 2006). "The question of whether reasonable suspicion existed at the time of an investigatory detention must be answered by examining the totality of the circumstances to determine whether there was a particularized and objective basis for suspecting the individual stopped of criminal activity." ***Commonwealth v. Thomas***, 273 A.3d 1190, 1197 (Pa. Super. 2022) (citations omitted). Police have the authority to stop a motor vehicle for further investigation of a Vehicle Code violation that is occurring or has just occurred. ***Clinton***, 905 A.2d at 1030. The stop here was supported by reasonable suspicion because the detectives observed the vehicle Appellant was driving traveling between 40 and 50 MPH in a 25 MPH speed zone, a violation of the Vehicle Code.

Police may request that both drivers and passengers exit a lawfully stopped vehicle as a matter of right. If a motor vehicle has been lawfully detained for a traffic violation, police officers may order the occupants to get out without violating the Fourth Amendment's prescription of unreasonable searches and seizures. This rationale extends to all vehicle occupants even absent reasonable suspicion that additional criminal activity is afoot. *Commonwealth v. Pratt*, 930 A.2d 561, 564 (Pa. Super. 2007). Thus, when the detectives first asked the rear passenger and then Appellant to step out of the car, those requests were constitutional as a matter of right. The detectives need not have relied on the marijuana odor nor the suspicious demeanor or movements of any vehicle occupant to make that request.

During an investigatory stop in which an officer has ordered a driver to step out of the vehicle, the officer can pat down the driver or passenger only when the officer believes, based on specific and articulable facts, that the individual is armed and dangerous. Such pat downs, which are permissible "without a warrant and on the basis of reasonable suspicion less than probable cause, must always be strictly limited to that which is necessary for the discovery of weapons that might present a danger" to the detectives or others. *Commonwealth v. Parker*, 957 A.2d 311, 314-315 (Pa. Super. 2008). Here, the detectives first removed the rear passenger and conducted a constitutional pat-down for weapons after that passenger's upper body movements,

consistent with obtaining or concealing a weapon, gave rise to reasonable suspicion.

For Appellant, however, the issue is not if the detectives had specific and articulable facts that gave rise to reasonable suspicion that Appellant was armed and dangerous[4] because, while an officer may only conduct a pat-down of a person stopped if the officer possesses reasonable suspicion that the person may be armed and dangerous, here, the pat-down of Appellant and retrieval of the weapon did not occur until *after* the detectives plainly observed the firearm in Appellant's hoodie pocket. Thus, the pat-down need not have been based on a set of articulable facts giving rise to reasonable suspicion because the detectives had more than reasonable suspicion that Appellant was armed—they were *certain* Appellant was armed because Detective Maloney saw the weapon in plain view after making the request that Appellant put his arms down.

The request by Detective Maloney that Appellant put his arms at his side was justified for officer safety. During any level of interaction between officers

_____

[4] If this were the appropriate inquiry, we would find that there are specific and articulable facts that gave rise to reasonable suspicion that Appellant was armed and dangerous. At the inception of the traffic stop, the detectives observed Appellant acting extremely nervous and was hunched forward in a "weird manner, not typical [of] what you would see in a normal, routine traffic stop." N.T. at 11-12. His demeanor was threatening as if he was about to strike one of the detectives, he appeared to be concealing a weapon in a "T-Rex" position, and had his elbows clenched into his stomach where the detectives could see a large bulge. N.T. at 12.

and citizens, officers may make reasonable requests of the suspect to stand up straight, place arms at side, or take hands out of pockets. This Court has stated:

> An officer is justified in insisting that a citizen not conceal his hands during an encounter with police; an officer may make this reasonable request to ensure his or her own protection in case that individual is armed. This Court has stated that if during a mere encounter, an individual on his own accord, puts his hands in his pocket, thereby creating a potential danger to the safety of a police officer, the officer may justifiably reach for his side arm and order the individual to stop and take his hand out of his pocket. Such reaction by a police officer does not elevate the mere encounter into an investigative detention because the officer's reaction was necessitated by the individual's conduct. **Coleman**, 19 A.3d at 1117 (quoting **Commonwealth v. Carter**, 2001 PA Super 201, 779 A.2d 591, 594 (Pa. Super. 2001) (noting that the fact that the officer asked the appellant to take his hands out of his pockets did not turn the encounter into a seizure)). **See also Commonwealth v. Blair**, 2004 PA Super 394, 860 A.2d 567, 573 (Pa. Super. 2004) (finding that interaction remained a mere encounter when an officer approached a parked car and asked its occupants to show their hands).

**Commonwealth v. Thomas**, 179 A.3d 77, 82-83 (Pa. Super. 2018).

During the investigative detention at issue here, the detective was justified in asking Appellant to put his arms down because Appellant's own conduct and posture necessitated the detective's request. While Appellant was standing outside the vehicle after having been lawfully ordered out of it, Appellant remained hunched over with his elbows clenched into his waistline area. Detective Stegena described Appellant's arms as being in a "T Rex"

position consistent with appellant concealing something.[5] As a result of these observations, Appellant was asked to put his arms down. When he did, the firearm was immediately seen by the officers in his front pocket. Only *then* was he patted down, and the already-discovered firearm retrieved.

The detectives properly seized the firearm from Appellant's person without a warrant because it was in plain view.

> The plain view doctrine allows the admission of evidence seized without a warrant when: (1) an officer views the object from a lawful vantage point; (2) it is immediately apparent to him that the object is incriminating; and (3) the officer has a lawful right of access to the object. ***See Commonwealth v. Collins***, 2008 PA Super 124, 950 A.2d 1041, 1045 (Pa. Super. 2008) (*en banc*) (citation omitted) (emphasis added). "Where police officers observe incriminating-looking contraband in plain view in a vehicle from a lawful vantage-point, the lack of advance notice and opportunity to obtain a warrant provides the officers with a lawful right of access to seize the object in question*." **Commonwealth v. Brown***, 2011 PA Super 67, 23 A.3d 544, 557 (Pa. Super. 2011) (*en banc*).

***Commonwealth v. Davis***, 287 A.3d 467, 471 (Pa. Super. 2022).

---

[5] Appellant notes in his brief that he behaved this way on a January day when the weather was cold, perhaps suggesting that the officers should have interpreted his posture as huddled into his person in a manner consistent with attempting to stay warm. Appellant's Br. at 8. However, "[t]his Court has held that 'even in a case where one could say that the conduct of a person is equally consistent with innocent activity, the suppression court would not be foreclosed from concluding that reasonable suspicion nevertheless existed. ... Even a combination of innocent facts, when taken together, may warrant further investigation.'" ***Thomas***, 179 A.3d at 84.

The detectives viewed the object from a lawful vantage point because they were standing in public outside a vehicle after a lawful stop, and the officers were justified in asking Appellant to put his arms down based on his own conduct, thus exposing the firearm. The change in Appellant's body position resulted in the object being visible from a lawful vantage point giving the detectives lawful access to the object from where they were standing. The incriminating nature of the object was immediately apparent because Detective Stegena had experience with Appellant from a prior incident involving a firearm and knew that Appellant did not have a permit to carry to carry one. Therefore, the firearm was properly admitted into evidence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/12/2023