COMMONWEALTH of Pennsylvania, Appellant,

v.

Kevin CARTER, Appellee.

Superior Court of Pennsylvania.

Submitted June 11, 2001.
Filed July 9, 2001.

Michael W. Streily, Assistant District Attorney, Pittsburgh, for Com.

George W. Bills, Pittsburgh, for appellee.

BEFORE JOYCE, OLSZEWSKI and POPOVICH, JJ.

JOYCE, J.:

¶ 1 Appellant, the Commonwealth of Pennsylvania, appeals the order entered in the Allegheny County Court of Common Pleas, which granted Appellee, Kevin Carter's motion to suppress. We affirm. The relevant factual and procedural history of this case are as follows:

¶ 2 On February 22, 1997, Officer Patrick Kinavey, a City of Pittsburgh police officer, was performing his general patrol duties in the Hazelwood section of Pittsburgh, a known high drug and crime area. At approximately 3:25 P.M., he observed Appellee on Flowers Avenue walking towards a pick-up truck parked on the street. Appellee began conversing with the two occupants of the truck. The officer observed him placing his left hand in his jacket pocket and start to remove that hand. Appellee appeared to look in the direction of the marked cruiser being operated by Officer Kinavey. He then mouthed the word "popo" (meaning police). The officer pulled his vehicle in front of the truck and as he drove by, he recognized one of the occupants of the truck as a self-described heroin user. Appellee then started walking away from the truck and the officer turned and began to follow him. When he came close to Appellee, the officer parked his vehicle, got out of the vehicle and asked Appellee if he could speak with him. Appellee responded, "what's up?" The officer again asked Appellee if he could speak with him. On direct examination, the officer testified that during this conversation, Appellee placed his hand in his left pocket. N.T. Suppression Hearing, 8/25/1999, at 39. On cross-examination however, the officer testified that during this conversation, he told Appellee to put his hand in his pocket. N.T. Suppression Hearing, 8/25/1999, at 116.

¶ 3 When Appellee put his hand in his left pocket, the officer then went for his side arm and asked Appellee to show his hands. Appellee then took his hand out of his left pocket and displayed a sandwich bag containing packages of heroin as well as a black object (which the officer later learned was a cellular phone). The officer pulled his gun, pointed it at Appellee and ordered him to stop. Appellee began to flee and a pursuit ensued. During this pursuit, an individual named DelRico Davis began running alongside Appellee. After a brief interval, Appellee handed the sandwich bag to DelRico and started running towards a different direction. Seeing this transaction, Officer Kinavey pursued DelRico who later discarded the sandwich bag in a grassy area.

¶ 4 Appellee then stopped, raised his hands and displayed the cellular phone in his hand. He stated that he only had a cellular phone and that he did nothing wrong. The officer placed Appellee in handcuffs and put him inside the police cruiser. The officer then recovered the discarded sandwich bag containing packages of heroin. Appellee was subsequently charged with one count of delivery of a controlled substance, drug device or cosmetic,[1] one count of possession with intent to deliver,[2] criminal conspiracy,[3] and possession of a controlled substance.[4]

¶ 5 On August 24, 1999, Appellee filed an omnibus pretrial motion seeking the suppression of the heroin recovered by officer Kinavey. A hearing was held on the suppression issues and on August 27, 1999, the court granted the motion to suppress with regard to the heroin recovered by Officer Kinavey. The Commonwealth now appeals, raising the following issue: "whether the trial court erred in suppressing [the] evidence?" Brief for Appellant, at 4.

¶ 6 When we review the Commonwealth's appeal from the decision of the

---

1. 35 P.S. § 780–113(a)(30).

2. 35 P.S. § 780–113(a)(30).

3. 18. Pa.C.S. § 903(a)(1).

4. 35 P.S. § 780–113(a)(16).

suppression court, "[we] consider only the evidence from the defendant's witnesses, together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted." *Commonwealth v. Nester*, 551 Pa. 157, 709 A.2d 879, 880–81 (1998). "When the evidence supports the suppression court's findings of fact ..., this Court may reverse only when the legal conclusions drawn from those facts are erroneous." *Commonwealth v. Valentin*, 748 A.2d 711, 713 (Pa.Super.2000).

¶ 7 In granting Appellee's motion to suppress, the suppression court concluded that the interaction between the police officer and Appellee began as a mere encounter and escalated into an investigative detention when the officer went for his weapon and ordered Appellee to stop and show his hands. The court reasoned that:

Although the initial questioning by Officer Kinavey may have been nothing more than a mere encounter, when Officer Kinavey went for his side arm and ordered the defendant [Appellee] to show his hands, his show of authority elevated the interaction to an investigatory detention, where a reasonable person would not have felt free to refuse to answer the Officer's questions or terminate the encounter.

Trial Court Opinion, 1/10/2001, at 6.

■ ¶ 8 The Commonwealth agrees that "the initial encounter between Officer Kinavey and [A]ppellee was a mere encounter that escalated into an investigative detention when the officer reached towards his weapon and asked to see [A]ppellee's hands." Brief for Appellant, at 9. However, the Commonwealth argues that "there was reasonable suspicion to support the officer's actions." *Id.*

There exists three levels of interactions between citizens and police officers under our Fourth Amendment jurispru-

dence: The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or respond. The second, an "investigative detention" must be supported by reasonable suspicion; it subjects a suspect to a stop and period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of arrest. Finally, an arrest or "custodial detention" must be supported by probable cause. An investigative detention constitutes a seizure of the person and must be supported by reasonable suspicion that those detained are engaged in criminal activity.

*Commonwealth v. Phinn*, 761 A.2d 176, 181 (Pa.Super.2000) (citations omitted).

■ ¶ 9 While we agree that the encounter between Officer Kinavey and Appellee escalated into an investigative detention, we will not establish a rule that whenever an officer reaches for his weapon during an encounter, such encounter automatically escalates into an investigative detention. We note that although on direct examination Officer Kinavey stated that Appellee put his hand in his pocket on his own accord (N.T. Suppression Hearing, 8/25/1999, at 39), on cross-examination the officer stated that he asked Appellee to put his hand in his pocket. N.T. Suppression Hearing, 8/25/1999, at 116. Since our standard of review requires us to consider only the evidence of Appellee's witnesses and the uncontradicted evidence presented by the Commonwealth, we are constrained to accept the version of the officer's testimony elicited during cross-examination. Officer Kinavey's order to Appellee to put his hand in his pocket gave rise to the danger, which made it necessary for the officer to reach for his weapon and order Appellee to stop and show his hands. Be-

cause the officer told Appellee to put his hand in his pocket, he improperly set in motion the chain of events that resulted in Appellee's flight and subsequent abandonment of the contraband. Under the circumstances of this case, the interaction between the officer and Appellee started as a mere encounter. It escalated into an investigative detention when the officer told Appellee to put his hand in his pocket, reached for his weapon, ordered Appellee to stop and show his hands, pulled his weapon, pointed it towards Appellee and again ordered him to stop and show his hands.

¶ 10 The critical factor in our conclusion that the suppression of the evidence was proper is the testimony by Officer Kinavey that he initially asked Appellee to put his hands in his pocket. N.T. Suppression Hearing, 8/25/1999, at 116. Since it was the officer who told Appellee to put his hand in his pocket, we find it absurd that the officer would then argue that he became concerned for his safety when Appellee complied with his directive. A police officer cannot for instance, ask an individual to pick up a gun lying on the floor, and then claim that he was afraid for his safety because the individual picked up the gun. A police officer is not permitted to create a dangerous situation and then use the self-created danger as the basis for escalating an encounter into a seizure.

¶ 11 Our conclusion would have been different if, without being prompted by Officer Kinavey, Appellee put his hand in his pocket. Under this scenario, Officer Kinavey could have reasonably feared for his safety as Appellee could have been attempting to retrieve a weapon from his pocket. The officer's concern for his safety would also be justified given Appellee's reputation as a member of a violent gang. Consequently, the officer's response in reaching for his side arm and ordering Appellee to stop and show his hands would not have escalated the encounter into an investigative detention. In other words, if during a mere encounter, an individual, on his own accord, puts his hand in his pocket, thereby creating a potential danger to the safety of a police officer, the officer may justifiably reach for his side arm and order the individual to stop and take his hand out of his pocket. Such reaction by the police officer does not elevate the mere encounter into an investigative detention because the officer's reaction was necessitated by the individual's conduct.

¶ 12 Having determined that the encounter escalated into an investigative detention, the issue then becomes whether the officer's actions were based on reasonable suspicion. The Commonwealth argues that "Officer Kinavey had both a reasonable fear for his safety, given [A]ppellee's gang membership and reputation for violence, as well as reason to believe that [A]ppellee was engaged in criminal activity that day, i.e., selling drugs to the occupants of the vehicle." Brief for Appellant, at 14. We disagree. Although Appellee may have had a reputation for violence, the escalation of the encounter resulted from Appellee's compliance with the officer's order. As such, the officer cannot plausibly claim that he had reasonable fear for his safety when Appellee complied with his order. With regard to the officer's observation of Appellee's interaction with the occupants of the vehicle, such observation could not have given rise to a reasonable suspicion that Appellee was engaged in criminal activity. The officer observed Appellee talking to the occupants of parked vehicle in a notoriously drug infested area of the city. N.T. Suppression Hearing, 8/24/1999, at 26. The officer knew that Appellee and his mother resided in this area of the city. The officer saw Appellee put his hand in his pocket as he spoke to the occupants of the vehicle (N.T. Suppression Hearing, 8/24/1999, at 26) but did not observe exchange of items. N.T.

Suppression Hearing, 8/25/1999, at 98. Neither did he observe any furtive activity by the occupants of the vehicle. N.T. Suppression Hearing, 8/25/1999, at 102. The officer observed Appellee mouth the word "popo" (meaning police) and walk away from the vehicle shortly thereafter. *See* N.T. Suppression Hearing, 8/24/1999, at 26. When considered in conjunction with the officer's education, training and experience in drug law enforcement, these observations may lead to an educated hunch but are insufficient to create a reasonable suspicion that Appellee was engaged in the sale of illegal drugs on the date in question.

¶ 13 In sum, we find that the officer's observation of Appellee's interaction with the occupants of the vehicle did not create a reasonable suspicion that Appellee was engaged in criminal activity. We also find that the since it was in compliance with the officer's order that Appellee put his hand in his pocket, such compliance cannot give the officer the impetus to escalate the encounter by reaching for his weapon and ordering Appellee to stop and show his hands. The officer, by ordering Appellee to put his hand in his pocket, improperly set in motion the chain of events that culminated in Appellee's flight and subsequent abandonment of the illegal drugs.

¶ 14 The evidence of record amply supports the suppression court's factual determinations and we find no error of law in the court's legal conclusion. Therefore, we will affirm the court's order, which properly suppressed the illegal drugs abandoned by Appellee during his flight from Officer Kinavey.

¶ 15 Order affirmed.

POPOVICH, J. concurs in the result.