J-S60025-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JERRY YELVERTON | |
| Appellant | No. 2930 EDA 2014 |

Appeal from the Judgment of Sentence July 14, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0006515-2014,
MC-51-CR-0006515-2014

BEFORE:  BENDER, P.J.E., LAZARUS, J., and OTT, J.

MEMORANDUM BY LAZARUS, J.:                **FILED OCTOBER 20, 2015**

Jerry Yelverton appeals from the judgment of sentence entered in the Municipal Court of Philadelphia on July 14, 2014.  On appeal, Yelverton challenges the court's denial of his motion to suppress evidence.  Upon careful review, we vacate Yelverton's judgment of sentence.

The Honorable Ann Butchart of the Court of Common Pleas of Philadelphia set forth the facts of this case as follows:

> This case arises out of a routine patrol on February 28, 2014 by Philadelphia Police.  Officers James O'Neill [and Padilla] were in full uniform in a marked patrol vehicle on the 1500 block of Capital Street in Philadelphia at approximately 6:40 p.m.  At the suppression hearing, Officer O'Neill testified that he observed [Yelverton] and an unknown black female standing side by side. [Yelverton] was on a bicycle.  [Yelverton] and the unknown black female had their hands extended toward each other.  Officer O'Neill, who was driving, testified that as he turned onto the 1500 block of Capital Street, the unknown black female looked in the officers' direction and [Yelverton] immediately turned around

and rode off on his bike. While still in the patrol vehicle, Officer O'Neill stopped [Yelverton]. Officer O'Neill testified that at this point the stop was an "investigation."

As Officer O'Neill spoke to him, [Yelverton's] left hand was out of view. Officer O'Neill asked [Yelverton] to show his left hand several time[s] but [Yelverton] did not comply. Officer O'Neill asked [Yelverton] to step off the bicycle. When [Yelverton] did not comply, Officer O'Neill exited the patrol vehicle and grabbed [Yelverton's] left hand. When Officer O'Neill grabbed [Yelverton], he could see a box of Newport cigarettes in [Yelverton's] left hand. While the cigarette box was still in [Yelverton's] hand, Officer O'Neill could see that inside the box was a bundle of heroin. The bundle was wrapped in a plastic rubber band and contained thirty-seven clear baggies with a blue glassine insert with white powder inside. The heroin was stamped "bad boy" and later placed on Philadelphia Property Receipt number 3125678.

Common Pleas Court Opinion, 4/8/15, at 2-3 (citations to record omitted).

Yelverton was charged with knowing and intentional possession of a controlled substance.[1] He subsequently filed a motion to suppress the physical evidence obtained by Officer O'Neill. The court held a hearing on July 14, 2014, after which it denied Yelverton's motion. Yelverton proceeded directly to trial before the Honorable Jacquelyn Frazier-Lyde and was found guilty of knowing and intentional possession of a controlled substance. Yelverton was sentenced to eighteen months of reporting probation.

On August 12, 2014, Yelverton filed a petition for writ of certiorari to the Court of Common Pleas of Philadelphia County,[2] which was denied on

---

[1] 35 P.S. § 780-113(a)(16).
[2] *See* Pa.R.Crim.P. 1006(1).

October 6, 2014. This timely appeal followed, in which Yelverton challenges

the denial of his suppression motion.

When reviewing the denial of a motion to suppress evidence, our

responsibility is as follows:

> to determine whether the record supports the suppression
> court's factual findings and the legitimacy of the inferences and
> legal conclusions drawn from those findings. If the suppression
> court held for the prosecution, we consider only the evidence of
> the prosecution's witnesses and so much of the evidence for the
> defense as, fairly read in the context of the record as a whole,
> remains uncontradicted. When the factual findings of the
> suppression court are supported by the evidence, the appellate
> court may reverse if there is error in the legal conclusions drawn
> from those factual findings.

*Commonwealth v. Tither*, 671 A.2d 1156, 1157-58 (Pa. Super. 1996).

> An officer [has] the authority to approach or briefly detain a
> citizen without probable cause for investigatory purposes. *Terry
> v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968);
> *Commonwealth v. Arch*, 439 Pa. Super. 606, 654 A.2d 1141,
> (1995). "In order for such a stop to be reasonable under the
> Fourth Amendment to the United States Constitution, the police
> officer must point to specific and articulable facts 'which in
> conjunction with rational inferences deriving therefrom' warrant
> the initial stop." *Arch*, *supra*, 654 A.2d at 1143 (quoting
> *Commonwealth v. Prengle*, 293 Pa. Super. 64, 437 A.2d 992,
> 994 (1981)). To meet this standard, the officer must observe
> unusual and suspicious conduct by the suspect which leads the
> officer to reasonably believe that criminal activity may be afoot.
> *Arch*, *supra*, 654 A.2d at 1144. Furthermore, the officer's
> conclusion cannot be based upon an "unparticularized suspicion"
> or "hunch." *Id.* (quoting *Terry*, 392 U.S. at 27, 88 S. Ct. at
> 1883).

*Id.* at 1158.

Here, Officer O'Neill initiated an investigative detention based upon his

observation of Yelverton standing with an unidentified black female with

their hands extended towards each other. After the woman observed the police, she and Yelverton left the area. Officer O'Neill testified that this incident occurred in a high-crime area where he had made "dozens" of narcotics arrests. N.T. Suppression Hearing, 7/14/14, at 10. Yelverton argues that these facts were insufficient to establish a reasonable suspicion on the part of Officer O'Neill that criminal activity was afoot.

In support of his claim, Yelverton highlights two decisions of this Court, *Commonwealth v. Tither*, 671 A.2d 1156 (Pa. Super. 1996), and *Commonwealth v. Carter*, 779 A.2d 591 (Pa. Super. 2001). In *Tither*, a veteran police officer was on routine patrol in an area known for frequent drug transactions and problems with prostitution and where the officer had made previous drug arrests. The officer heard someone yell, "5-0, 5-0," which he knew to be street jargon warning that police are in the area. The officer observed an automobile stopped in the middle of the one-way street about 100 feet in front of him and a male standing in the street, reaching into the car. Upon hearing "5-0, 5-0," the male left the car and walked into the nearest building and the car immediately pulled away. In concluding that the officer's observations did not establish probable cause, this Court noted that "the officer did not even observe an exchange between appellant and the man leaning into her window," nor did he witness "any actions which would suggest a transaction, let alone a drug transaction." *Id.* at 1158. "[W]hile the officer's curiosity might have been aroused by the action that

was witnessed, and while he may have had a hunch that illegal contraband was involved, that is not sufficient." *Id.* at 1159.

In *Carter*, a police officer witnessed the defendant speaking to two individuals in a truck, one of whom was a known heroin user, situated in a high crime area. The defendant then placed his hand in his pocket and began to remove the hand when he saw the officer and mouthed the word "popo." The defendant then walked away. The defendant was ultimately discovered to have been carrying a sandwich baggie containing packages of heroin. This Court concluded that the interaction at the truck did not establish reasonable suspicion and affirmed the trial court's suppression of the drugs.

> With regard to the officer's observation of [Carter's] interaction with the occupants of the vehicle, such observation could not have given rise to a reasonable suspicion that [Carter] was engaged in criminal activity. The officer observed [Carter] talking to the occupants of parked vehicle in a notoriously drug infested area of the city. The officer knew that [Carter] and his mother resided in this area of the city. The officer saw [Carter] put his hand in his pocket as he spoke to the occupants of the vehicle but did not observe exchange of items. Neither did he observe any furtive activity by the occupants of the vehicle. The officer observed [Carter] mouth the word "popo" (meaning police) and walk away from the vehicle shortly thereafter. When considered in conjunction with the officer's education, training and experience in drug law enforcement, these observations may lead to an educated hunch but are insufficient to create a reasonable suspicion that [Carter] was engaged in the sale of illegal drugs on the date in question.

*Carter*, 779 A.2d at 594-95 (Pa. Super. 2001) (citations to the record omitted).

The Commonwealth attempts to distinguish *Tither* and *Carter* based on subtle factual differences. The Commonwealth argues that in *Tither*, there were no actions which would suggest a transaction, whereas here both Yelverton and the unidentified black female had their hands extended. Likewise, in *Carter*, the Commonwealth argues that the defendant's act of placing his hand in his pocket and then removing it before fleeing did not give rise to reasonable suspicion, whereas here, "Officer O'Neill saw [Yelverton] and the woman in the middle of an exchange[.]" Brief of Appellant, at 15. We are unconvinced.

First, the Commonwealth neglects to note that, in *Tither*, the defendant was observed to be reaching into the car with one hand. We find this to be as suggestive of a transaction as the fact that Yelverton and the unidentified woman had their arms outstretched. Moreover, Officer O'Neill did not observe either party's hand to contain any items, such as a baggie of drugs or cash. Nor did he observe any indication, such as a cupped hand or a balled fist, that any items might be hidden in either party's hand. *Compare Commonwealth v. Cook*, 735 A.2d 673 (Pa. 1999) (reasonable suspicion found where officer observed defendant take his left hand out of his front pocket in fist position and reach toward other individual, who attempted to receive unidentified item from his hand). Yelverton's mere presence in a high crime area in no way establishes his involvement in criminal activity. *See Commonwealth v. Key*, 789 A.2d 282, 289 (Pa. Super. 2001). Neither does the fact that Yelverton rode off on his bicycle

upon observing police constitute reasonable suspicion of criminal activity. *Id.* at 289-90. In sum, we find that, based on the totality of the circumstances, Officer O'Neill's observations "may lead to an educated hunch but are insufficient to create a reasonable suspicion" that Yelverton was engaged in an illicit transaction. *Carter*, 779 A.2d at 595.

Judgment of sentence vacated.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/20/2015