J-S33020-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| VICTOR FULTON COLLINS JR. | : | |
| | : | |
| Appellant | : | No. 440 WDA 2023 |

Appeal from the Judgment of Sentence Entered December 16, 2022
In the Court of Common Pleas of Beaver County Criminal Division at
No(s): CP-04-CR-0001378-2021

BEFORE: BENDER, P.J.E., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY McCAFFERY, J.: **FILED: DECEMBER 8, 2023**

Victor Fulton Collins, Jr. (Appellant) appeals from the judgment of sentence imposed in the Beaver County Court of Common Pleas following his jury conviction of possession of controlled substances (fentanyl) and possession with intent to deliver (PWID) controlled substances (fentanyl).[1] Appellant raises five issues on appeal challenging the denial of his pretrial suppression motion, the weight and sufficiency of the evidence supporting his convictions, trial court rulings concerning testimony regarding a "hand to hand transaction" and the Commonwealth's expert witness, and the court's denial of his motion for extraordinary relief based on an inconsistent verdict. For the reasons below, we affirm.

---

[*] Former Justice specially assigned to the Superior Court.

[1] See 35 P.S. §§ 780-113(a)(16), (30).

J-S33020-23

In the early morning hours of May 15, 2021, Appellant was arrested after New Brighton police officers recovered drugs from the floor of the passenger seat in a car in which he was the passenger. He was subsequently charged with PWID (fentanyl), possession of controlled substances (fentanyl) and possession of drug paraphernalia.[2]

On December 15, 2021, Appellant filed an omnibus pretrial motion seeking, *inter alia*, suppression of the evidence recovered from the car stop, which he argued was not supported by reasonable suspicion. **See** Appellant's Omnibus Pre-Trial Motion, 12/15/21, at 4-5 (unpaginated). The suppression court[3] conducted a hearing on June 8, 2022, at which time the Commonwealth presented the testimony of New Brighton Police Officer Jeremy Conley.[4]

Officer Conley testified that on May 15, 2021, he was positioned in his patrol vehicle in the 500 block of Eighth Avenue in New Brighton, "monitoring" the 600 block of Seventh Avenue, because the police "had been receiving complaints about . . . drug trafficking" in that area. N.T., Supp. Hrg., 6/8/22,

---

[2] **See** 35 P.S. § 780-113(a)(32).

[3] President Judge Richard Mancini conducted the suppression hearing, and Judge Kim Tesla presided over the subsequent jury trial.

[4] We summarize the suppression hearing testimony in detail because Appellant challenges the suppression court's ruling, and "[o]ur scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing." **Commonwealth v. Tillery**, 249 A.3d 278, 280 (Pa. Super. 2021) (citations omitted).

- 2 -

at 11.[5] In addition to his duties as a New Brighton police officer, Officer Conley explained that he was a member of the Attorney General's drug task force, and, as such, had been involved in numerous narcotics investigations. *See id.* at 10.

During his surveillance, Officer Conley observed Appellant, whom he recognized "[f]rom prior incidents over [his] eight year career[,]"[6] walking towards another male. N.T., Supp. Hrg., at 12. He stated:

> I observed [Appellant] approach . . . another male. They walked up to each other. I seen a hand-to-hand exchange, and then they both immediately walked separate ways.

*Id.* Officer Conley agreed the "hand-to-hand" exchange he observed was "[p]retty much identical" to those he had seen as a member of the drug task force. *Id.*

Officer Conley then drove from his surveillance position to the area where the transaction occurred and saw Appellant walking "into the dead end of 7th Street off of Seventh Avenue." *See* N.T., Supp. Hrg., at 14-15. As the officer approached, a vehicle emerged from the dead-end street with Appellant as the passenger. *Id.* at 16. Officer Conley drove around the block, pulled

_____

[5] The reference to "**March** 15, 2021" in the hearing transcript appears to be a typographical error. *See id.* at 11 (emphasis added).

[6] At one point, the Commonwealth's attorney asked the officer how he knew Appellant. *See* N.T., Supp. Hrg., at 13. Officer Conley answered, "He's a known drug trafficker." *Id.* Appellant's counsel immediately objected, and the suppression court sustained the objection. Therefore, we do not consider that testimony in our analysis.

up behind the vehicle, and initiated a traffic stop. *Id.* As the vehicle was pulling over, the officer saw Appellant "immediately" make "furtive movements, bending forward." *Id.* at 17.

Officer Conley called for backup, and two additional officers arrived shortly thereafter. *See* N.T., Supp. Hrg., at 17. While Officer Conley was speaking to the driver, who was identified as Jason Walzer, Appellant, unprompted, "leaned over and said, 'I was just getting a ride to my dad's house.'" *Id.* at 17-18.

Officer Conley subsequently removed Appellant from the vehicle. *See* N.T., Supp. Hrg., at 19. While he was conducting a pat-down search, another officer "observed on the floorboard where [Appellant's] feet were a plastic bag that contained stamp bags." *Id.* Officer Conley placed Appellant in handcuffs and obtained Mr. Walzer's consent to search the vehicle. *See id.* at 18-19. In addition to the stamp bags, the search revealed a scale under the front passenger seat (where Appellant had been sitting), and glass crack pipe in the glove compartment, which Mr. Walzer admitted was his.[7] *See id.* at 19, 21-22. Officer Conley searched Appellant incident to his arrest and recovered, *inter alia*, $1,848.00 in cash. *Id.* at 21. Although his field test of one of the stamp bags was "positive for the presence of heroin and fentanyl[,]" later lab

_____

[7] Mr. Walzer also had another crack pipe on his person. N.T., Supp. Hrg., at 22.

results confirmed only the presence of "fluorofentanyl[,] a Schedule I controlled substance." **Id.** at 20-21.

Under cross-examination, Officer Conley acknowledged that he did not see any items change hands during the initial hand-to-hand street exchange between Appellant and the other male. **See** N.T., Supp. Hrg., at 26-27. He commented, however, that "[d]rugs can be so small that they can be concealed and exchanged in a handshake." **Id.** at 26.

At the conclusion of the hearing, the suppression court took the motion under advisement, and, on July 19, 2022, entered an order and accompanying opinion denying Appellant's motion to suppress.[8] **See** Order, 7/19/22. The case proceeded to a jury trial commencing on November 14, 2022.

At trial, Officer Conley recounted the events leading to Appellant's arrest and provided testimony substantially similar to his testimony at the suppression hearing. However, his trial testimony included the following details: (1) the digital scale recovered under the front passenger seat was not "shoved . . . towards the back[,]" but rather, "right at the front underneath the seat[;]" (2) the baggie recovered from the passenger floorboard contained "three different groups of little baggies with a [rubber band] around them. . . along with numerous empty stamp bags[;]" and (3) the lab report indicated that one group of baggies, "labeled Mercedes," contained fluorofentanyl, but

---

[8] The order and opinion also denied a motion for *habeas corpus*, which is not relevant to this appeal.

another group of baggies contained no controlled substances. *See* N.T. Jury Trial, 11/15/22, at 69, 70, 97-98. The Commonwealth also presented a stipulation regarding the state crime lab report. *See id.* at 94. The report indicated that the "net weight" of the drugs recovered was "0.14 grams, plus or minus 0.1 gram, and one of those bags was confirmed to contain 0.025 grams, plus or minus 0.003 grams fluorofentanyl." *Id.* at 96.

The Commonwealth also called Center Township Police Detective Aldo Legge to testify as an expert witness.[9] Detective Legge stated that he is a 29-year veteran officer with the Center Township Police, and has extensive experience in narcotics investigations through his work with the Beaver County Drug Task Force, the High Intensity Drug Trafficking Area (HIDTA) task force, and the FBI Transactional Organized Crime Task Force. *See* N.T., 11/15/22, at 184-85. He estimated that he had been conducting narcotics investigations "[a]lmost the entirety of [his] career [or] at least 25 years." *Id.* at 185-86. Detective Legge described his training and continuing education in that field. *See id.* at 186-87, 189. He stated that he had testified as an expert in drug trafficking on one prior occasion, in August of 2022. *See id.* at 189.

---

[9] In addition, the Commonwealth presented testimony from the two New Brighton police officers who responded to the scene to assist Officer Conley — Officers Jonathon Pisano and Donald Dobson. *See* N.T., 11/15/22, at 149-72.

In cross-examining Detective Legge regarding his qualifications, Appellant's counsel focused on the fact that he had only been an expert on one prior occasion and he offered his opinion in that case on behalf of the Commonwealth. *See* N.T., 11/15/22, at 191-93. Thereafter, the trial court accepted Detective Legge as an "expert witness in the area of drug trafficking." *Id.* at 193. Appellant made no objection. *See id.*

The trial court summarized Detective Legge's expert testimony as follows:

> Detective Legge testified that when conducting investigations into potential narcotic distribution schemes, drug task forces look for certain paraphernalia, such as plastic bags, envelopes, paper wrapping, duct tape, packing tape, certain kinds of packages, and small scales for weighing drugs. Detective Legge concluded that [Appellant] possessed the fentanyl, digital scale, and plastic stamp bags with the intent to sell fentanyl. He stated that drug dealers use digital scales like the one found in this case to package specific amounts of the narcotics they intend to sell. He also shared his professional knowledge that drug dealers often package their product in plastic stamp bags, much like the ones found on the floor in the front of the passenger's seat in this case.
>
> Detective Legge . . . noted that stamp bags used for the sale of narcotics typically have a brand on them to denote the potency of the drugs contained in the bag, like the stamp bags marked with the Mercedes logo found near [Appellant]. According to the detective, one stamp bag's worth of narcotics would be worth somewhere between $7-10. He also [opined] that the denominations of the currency found on [Appellant's] person indicated his involvement in distributing controlled substances. Detective Legge . . . testified that it is unusual for a personal drug user to have over $1,000 in cash on their person. Further, a drug user would typically have some sort of paraphernalia that they would use to introduce the substance into their body, such as a syringe in the case of heroin or fentanyl.

On cross-examination, [Appellant's c]ounsel brought out several alleged errors in Detective Legge's report[, including the fact that the] report . . . stated the wrong numerical amount as the net weight of the seven stamp bags with the Mercedes logo that were tested at the laboratory. According to the laboratory report, the net weight of those seven stamp bags was 0.14 grams, but Detective Legge's report stated that the net weight of the stamp bags was 0.175 grams. Detective Legge acknowledged this mistake, but he still held to his conclusion that the net weight stated in the lab report demonstrates an intent to deliver the narcotics.

[Appellant's c]ounsel observed that, given this net weight of the contents of the baggies with the Mercedes logo on them, combined with the fact contained in Detective Legge's expert report that one gram of fentanyl is worth at least $150, the total value of the fentanyl contained in the baggies found . . . in the vehicle at [Appellant's] feet . . . was worth between $21-35. Since the laboratory only confirmed that one bag weighing 0.02 grams contained fentanyl, [Appellant's c]ounsel concluded that this bag contained about $3-5 worth of fentanyl. Finally, [Appellant's c]ounsel questioned Detective Legge's opinions deriving from the fact that [Appellant] had small denominations of currency on his person, since law enforcement might find either large or small bills suspicious. . . . [Appellant's c]ounsel also brought out the fact that the digital scale found [under the passenger seat] was not sent to the laboratory for testing.

Trial Ct. Op., 5/11/23, at 8-9 (record citations omitted; some paragraph breaks added).

On November 17, 2022, the jury returned a verdict of guilty on the charges of PWID and possession of controlled substances, but not guilty on the charge of possession of drug paraphernalia. Appellant's sentencing hearing was conducted on December 16, 2022. At that time, Appellant's counsel presented an oral motion for extraordinary relief seeking an arrest of judgment, judgment of acquittal, or a new trial. *See* N.T. Sentencing H'rg, 12/16/22, at 9-10. Counsel argued the drug evidence should have been

suppressed and the jury's verdict was inconsistent. *See id.* at 10-20. The trial court denied the motion and proceeded to sentence Appellant to a term of 33 to 120 months' incarceration followed by five years' probation for PWID; his remaining conviction merged for sentencing purposes. *See id.* at 20, 63-64.

Appellant filed a timely post-sentence motion, challenging the sufficiency and weight of the evidence, and arguing the verdict was inconsistent. *See* Appellant's Motion for Post-Sentence Relief, 12/23/22, at 1-2 (unpaginated). Appellant also requested transcription of the trial transcript, and permission to filed supplemental post-sentence motions after review. *See id.* at 2. The trial court later granted Appellant until February 16, 2023, to file supplemental post-sentence motions. *See* Order, 1/26/23, at 1 (unpaginated). Appellant filed a supplemental motion on that date, challenging the trial court's rulings permitting Officer Conley to testify regarding the "'hand to hand' interaction that he observed on the date in question[,]" and permitting Detective Legge to testify as an expert witness. *See* Appellant's Supplemental Motion for Post-Sentence Relief, 2/16/23, at 2 (unpaginated). The trial court conducted oral argument on March 10, 2023, and denied Appellant's motions on March 21st. This timely appeal follows.[10]

Appellant presents the following six issues for our review:

_____

[10] Appellant complied with the trial court's directive to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

- 9 -

[1] Whether the trial court erred in denying . . . Appellant's pre-trial motion to suppress on July 19, 2022[?] . . .

[2] Whether the trial court erred in permitting [Officer Conley] to testify at trial as to the "hand to hand" interaction that he observed on the date in question[?] . . .

[3] Whether the trial court erred in permitting the Commonwealth to present [its] last witness in [its] case-in-chief as an expert[?] . . .

[4] Whether the trial court erred in not granting extraordinary relief [because] the jury verdict should have been set aside for being inconsistent, in that, the jury acquitted Appellant of the possession of drug paraphernalia count[?]

[5] Whether the Commonwealth presented sufficient evidence to prove the elements of the underlying drug offenses[?]

[6] Whether the jury's verdict was against the weight of the evidence presented by the Commonwealth at trial[?]

Appellant's Brief at 3-4 (some capitalization omitted).

In his first issue, Appellant contends Officer Conley had no reasonable basis to conduct the vehicle stop, and, therefore, the suppression court erred when it denied his motion to suppress the evidence recovered as a result of that stop. *See* Appellant's Brief at 11. He argues that although the officer's purported basis for the stop was a hand-to-hand narcotics exchange, Officer Conley conceded "he was unable to see any object 'change hands' between the two people." *Id.* at 12. Relying on several decisions of this Court, Appellant insists that Officer Conley was "operating on a hunch[,]" which was insufficient to establish the requisite reasonable suspicion that Appellant was engaged in the sale of narcotics necessary to support the vehicle stop. *See id.* at 13-16.

- 10 -

Our review of a pretrial order denying a motion to suppress is guided by the following:

> Our standard of review . . . requires us to consider only the Commonwealth's evidence and so much of the defense's evidence as remains uncontradicted when read in the context of the record as a whole. Where the record supports the suppression court's factual findings, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. However, . . . where the appeal turns on allegations of legal error, the suppression court's conclusions of law are not binding as it is this Court's duty to determine if the suppression court properly applied the law to the facts. As such, the legal conclusions of the lower courts are subject to our plenary review.

**Commonwealth v. Dunkins**, 263 A.3d 247, 252 (Pa. 2021), *cert. denied sub nom. Dunkins v. Pennsylvania*, 142 S. Ct. 1679 (U.S. 2022). Moreover, our scope of review is limited to the evidence presented at the suppression hearing. **See Tillery**, 249 A.3d at 280.

To justify an investigatory stop of a vehicle, police officers must possess reasonable suspicion of criminal activity. **Commonwealth v. Knupp**, 290 A.3d 759, 767 (Pa. Super. 2023). **See also Commonwealth v. Adams**, 205 A.3d 1195, 1201 (Pa. 2019) ("[A] traffic stop is an investigative detention that itself requires reasonable suspicion or probable cause."). "

> In reviewing whether reasonable suspicion . . . exists, we must . . . examine the totality of the circumstances to determine whether there exists a particularized and objective basis for suspecting an individual [ ] of criminal activity. Even innocent factors, viewed together, may arouse suspicion that criminal activity is afoot.

**Knupp**, 290 A.3d 767 (citations & quotation marks omitted). As our Supreme Court has explained:

> [A]n investigative detention is constitutionally permissible if an officer identifies specific and articulable facts that led the officer to believe that criminal activity was afoot, considered in light of the officer's training and experience. [I]n determining whether the officer acted reasonably . . ., due weight must be given, not to his inchoate and unparticularized suspicion or hunch, but to the **specific reasonable inferences which he is entitled to draw from the facts in light of his experience**.

*Adams*, 205 A.3d at 1205 (citations & quotation marks omitted; emphasis added).

Here, based on the totality of the circumstances, the suppression court concluded Officer Conley possessed the requisite reasonable suspicion to stop the vehicle in which Appellant was a passenger and briefly detain him. *See* Supp. Ct. Op. at 8. The court opined:

> [W]here an experienced narcotics officer, who was monitoring a specific block late at night due to reports of drug activity, observes a man, known to him[11] . . . , walk up to another male and conduct a hand-to-hand exchange[, after which,] both individuals immediately part ways, under the totality of the circumstances, [the officer] had sufficient reasonable suspicion supported by articulable facts to briefly detain [Appellant], regardless of the fact that the officer could not identify the object that was exchanged between the individuals.

---

[11] We note the suppression court stated that Appellant was known to Officer Conley "to distribute narcotics[.]" *See* Supp. Ct. Op. at 8. However, as noted *supra*, the trial court sustained an objection to this testimony during the suppression hearing. *See* N.T., Supp. H'rg, at 13-14. Thus, we do not consider that fact in our analysis.

Nevertheless, Appellant did not object when Officer Conley testified that he recognized Appellant "[f]rom prior incidents over [his] eight year career[,]" and that Appellant was "known to [him.]" N.T., Supp. H'rg, at 12. Accordingly, the fact that Officer Conley knew Appellant based upon past police interactions is a relevant factor in our analysis.

*Id.* at 8.

Upon review, we detect no basis to disturb the suppression court's ruling. First, Officer Conley, as a member of the Attorney General's drug task force, was very experienced in narcotics transactions, and particularly "hand-to-hand" exchanges. *See* N.T., Supp. H'rg, at 10-11. He explained that he was monitoring the 600 block of Seventh Avenue — where he witnessed Appellant's interaction with the other male — because the police department "had been receiving complaints about . . . drug trafficking" in that very area. *Id.* at 11. Officer Conley observed Appellant — whom he knew from "prior incidents" with police — approach another man, conduct a "hand-to-hand exchange, and then . . . both immediately walk[ ] separate ways." *Id.* at 12. Although he did not see any objects change hands, Officer Conley agreed that the exchange he witnessed was "[p]retty much identical" to the hand-to-hand exchanges he observed as a member of the drug task force. *Id.* at 12, 26-27. He also explained that "[d]rugs can be so small that they can be concealed and exchanged in a handshake." *Id.* at 26.

We conclude this Court's decision in *Commonwealth v. Clemens*, 66 A.3d 373 (Pa. Super. 2013), is instructive. In that case, a police officer was on routine patrol in a "very high in crime and very violent" neighborhood, which the officer had patrolled for five years. *Id.* at 375 (record citation & quotation marks omitted). The officer testified he was "personally aware of . . . nonstop open-air narcotics sales" in the area. *Id.* (record citation & quotation marks omitted). While driving down a block at mid-morning, the

officer observed the defendant engage in a "hand-to-hand transaction with an unknown male." *Id.* at 376 (record citation omitted). Similar to the case before us, the officer acknowledged he "did not observe money or objects pass between the two individuals, [but] testified that — based upon his training and years of experience — he was of the conviction that he had just witnessed a narcotics transaction." *Id.* After the exchange, the defendant looked "directly at the marked police vehicle" and ran to the porch of a nearby house, and pretended like he was reading a newspaper. *Id.* (record citation omitted). The officer approached and asked the defendant if he lived at that address and if he had any identification. *See id.* The defendant responded no to both questions. *See id.* The officer then asked the defendant to stand up so he could pat him down for safety reason, and, when he stood up and spread his legs, a baggie of suspected narcotics fell from his pants. *Id.* at 376-77.

The defendant was arrested and later filed a suppression motion, asserting, *inter alia*, the officer had no reasonable suspicion to conduct an investigatory detention. *Clemens*, 66 A.3d at 377. The trial court denied the motion, and a panel of this Court affirmed on appeal. *See id.* at 377, 380-81. The *Clemens* panel emphasized the following facts: (1) although he did not see any items or money exchanged, the officer testified that "based upon his experience and training, he witnessed [the defendant] engage in a hand-to-hand narcotics transaction[;]" (2) the officer was "extremely familiar" with the area — which was "home to nonstop open-air narcotics sales" — and "extremely experienced in narcotics investigations[;]" and (3) after the

defendant saw the marked vehicle, he "suspiciously ran onto the porch" of a nearby residence and "pretended to read a newspaper." *Id.* at 380 (quotation marks omitted). The Court concluded:

> Given these "specific and articulable facts," we agree that "an objectively reasonable police officer would have reasonably suspected" that [the defendant] had sold narcotics to the unidentified man. As such, we agree that the investigatory detention was properly supported by reasonable suspicion.

*Id.*

The facts in the present case are very similar to those in *Clemens*. Officer Conley, who was experienced in narcotics investigations, observed what he believed to be a hand-to-hand exchange between Appellant — whom he knew from prior encounters with police — and an unidentified male in an area where he was conducting surveillance based upon specific complaints of drug trafficking. Although Appellant did not see Officer Conley, like the defendant in *Clemens*, he did proceed immediately to a dead-end street and enter a vehicle parked therein. We conclude that, under the totality of the circumstances, Officer Conley had the requisite reasonable suspicion to conduct an investigatory detention of Appellant and did so by conducting a traffic stop.

Moreover, the cases upon which Appellant relies do not compel a different result. In *Commonwealth v. Carter*, 779 A.2d 591 (Pa. Super. 2001), an officer was on "general patrol" in his marked vehicle in a high drug and crime area of Pittsburgh. *See id.* at 592. Mid-afternoon, the officer

- 15 -

observed the defendant walk towards a parked pick-up truck and being conversing with the occupants. *Id.* The defendant placed his left hand in his jacket and began to remove it when he looked in the direction of the officer and "mouthed the word 'popo' (meaning police)." *Id.* The officer pulled in front of the truck and recognized one of the occupants as a known drug user. *Id.* At that point, the defendant began to walk away, and the officer asked to speak with him. *Id.* During the conversation, the officer told the defendant to put his hand in his pocket, but then "went for his side arm and asked [the defendant] to show his hands." *Id.* The defendant displayed a baggie of drugs and began to flee. *See id.* He was subsequently apprehended and arrested. *Id.*

The defendant filed a pretrial motion to suppress, which the trial court granted. *See Carter*, 779 A.2d at 592. On appeal by the Commonwealth, a panel of this Court affirmed. *See id.* at 595. Relevant herein, the panel concluded that the officer's observations "could not have given rise to a reasonable suspicion that [the defendant] was engaged in criminal activity." *Id.* at 594. The panel explained that while the officer saw the defendant put his hand in his pocket as he spoke to the occupants of a car in a "notoriously drug infested area of the city[,]" he did not see the exchange of any items, or observe any furtive movement. *Id.* at 594-95. Thus, the *Carter* Court determined that while the officer may have had an "educated hunch" that a drug deal was imminent, the facts presented were "insufficient to create a

reasonable suspicion that [the defendant] was engaged in the sale of illegal narcotics on the date in question." *Id.* at 595.

Appellant insists that, in the present case, Officer Conley was similarly "operating on a hunch[.]" *See* Appellant's Brief at 14-15. We disagree. Here, Officer Conley was conducting surveillance based upon **specific** "complaints about . . . drug trafficking" in the area where the hand-to-hand interaction occurred. *See* N.T., Supp. H'rg, at 11. He saw Appellant, whom he recognized from "prior incidents" with police, walk up to another man and engage in what he described as a "hand-to-hand exchange" after which both men immediately walked "separate ways". *See id.* at 12. Officer Conley agreed that the transaction he witnessed was "[p]retty much identical" to the hand-to hand narcotics exchanges he observed during his work with the drug task force. *Id.* Moreover, while he acknowledged he did not see any items change hands, he noted that "[d]rugs can be so small that they can be concealed and exchanged in a handshake." *Id.* at 26. Accordingly, Officer Conley's experience, particularly with the type of interaction he witnessed, distinguishes this case from the facts in *Carter*.

Appellant also relies upon this Court's unpublished decision in *Commonwealth v. Almanzar*, 1463 EDA 2019 (unpub. memo. at 14) (Pa. Super. 2020),[12] in which a panel of this Court concluded officers did not

---

[12] Unpublished, non-precedential decisions of this Court "filed after May 1, 2019 . . . may be cited for their persuasive value." Pa.R.A.P. 126(b)(1)-(2).

possess **probable cause** to stop and search the defendant's vehicle after observing him and his co-defendant "conduct[ ] one, daytime, trunk-to-trunk transfer of a bag." Acting on "complaints about several Hispanic men entering and exiting [a] property while carrying packages[,]" officers conducted surveillance at the property on May 22, 2017. *Id.* at 1-2. Although they observed several men exiting and entering the property and various vehicles, exchanging unidentified items, the officers did not observe either the defendant or his co-defendant that day. *Id.* at 2-3.

When they conducted additional surveillance two days later, on May 24th, officers witnessed the defendant arrive in his vehicle and back up to a Jeep, so that the trunks of the two vehicles were facing each other. *See Almanzar*, 1463 EDA 2019 (unpub. memo. at 3). The Jeep was one of the vehicles involved in the transactions on May 22nd. *See id.* at 2. At that time, the co-defendant "retrieved a large, green bag from the trunk of the Jeep and transferred in into the trunk" of the defendant's vehicle. *Id.* at 3. When the defendant drove off, officers stopped him and searched his trunk, where they found "1,150 bundles of heroin inside the green bag." *Id.*

After his arrest, the defendant filed a motion to suppress the evidence recovered from the warrantless vehicle search. *Almanzar*, 1463 EDA 2019 (unpub. memo. at 4). The trial court granted the motion, finding the evidence was insufficient to establish **probable cause** for the vehicle stop. *Id.* at 6. Despite the fact that the investigating officer stated he "had seen drug dealers park in a trunk-to-trunk' formation to transfer contraband" in the past, and

that the defendant's vehicle had been involved in a "prior drug investigation[,]"[13] the trial court concluded:

> Applying a totality of the circumstances test, the [c]ourt **did not find** that the single, midday transfer of a bag, whose contents were unknown, from the trunk of one car to another between two unidentified individuals provided officers with probable cause to search the vehicle Appellee was driving.

*Id.* at 14 (citation omitted & emphasis added). The trial court further recognized that during surveillance two days prior, officers "observed separate encounters that involved no money, but only the transfer of a box of diaper and an object[, which lacked] specificity to determine whether drugs were actually being moved[.]" *Id.* at 13-14 (citation & quotation marks omitted). As noted *supra*, a panel of this Court affirmed on appeal.

Appellant maintains that, like the officers in *Almanzar*, Officer Conley "did not observe any items of contraband being exchanged, nor could he articulate any facts that would demonstrate criminal activity was afoot[; rather,] the activities of [ ] Appellant were ordinary or innocuous." Appellant's Brief at 15. For the reasons discussed above, we disagree. Moreover, we emphasize that the *Almanzar* Court considered whether the facts supported a finding of **probable cause**, not reasonable suspicion. It is well-settled that "[r]easonable suspicion is a **less stringent** standard than probable cause necessary to effectuate a warrantless arrest[.]" *Commonwealth v. Brown*, 996 A.2d 473, 477 (Pa. 2010) (emphasis added). *See also Commonwealth*

---

[13] *Almanzar*, 1463 EDA 2019 (unpub. memo. at 13).

*v. Jackson*, 302 A.3d 737, 748 (Pa. 2023) ("[R]easonable suspicion requires more than a mere hunch but considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause.") (citations & quotation marks omitted). Thus, for that reason alone, *Almanzar* is distinguishable. Accordingly, we conclude Appellant's first claim fails.

We address Appellant's remaining issues together. In his second claim, Appellant argues the trial court erred when it permitted Officer Conley to testify regarding the "hand to hand" exchange he witnessed which precipitated the vehicle stop.[14] *See* Appellant's Brief at 17. Appellant maintains there was no "foundation" for the testimony since Officer Conely admitted he did not see any items exchanged between the two men. *See id.* at 18. Moreover, although the court sustained his objection and issued a cautionary instruction, Appellant insists the jury was prejudiced by the testimony because they submitted a question to the court concerning how they were to consider the "hand-to-hand" interaction in their deliberations. *See id.*

---

[14] "[T]he admissibility of evidence is a matter solely within the discretion of the trial court[, and t]his Court will reverse an evidentiary ruling only where a clear abuse of discretion occurs." *Commonwealth v. Woeber*, 174 A.3d 1096, 1100 (Pa. Super. 2017) (citation omitted).

Third, Appellant insists his conviction should be set aside due to the jury's inconsistent verdict.[15]  **See** Appellant's Brief at 20.  Because the jury acquitted him of the possession of drug paraphernalia charge, that was based on the scale recovered from under his seat, Appellant argues the jury could not have convicted him of PWID, when the Commonwealth's expert considered his possession of the scale as critical evidence of his intent to deliver the drugs.  **See id.**

In his fourth claim, Appellant contends "the Commonwealth did not lay a proper foundation to establish" Detective Legge was an expert witness.[16]  Appellant's Brief at 19.  He emphasizes it was only the second time the detective was recognized as an expert, and that he "clearly had a bias in favor of the Commonwealth."  **Id.**  Moreover, Appellant argues Detective Legge's opinions should not have been admitted because the "phraseology" he used in his expert report does not comply with Pa.R.E. 702.  **Id.** at 20.

_____

[15] "It is well-settled that inconsistent verdicts are permissible" and "this Court will not disturb guilty verdicts on the basis of apparent inconsistencies as long as there is evidence to support the verdict." **Commonwealth v. Burton**, 234 A.3d 824, 829 (citations omitted).

[16] "[T]he admission of expert testimony is a matter of discretion for the trial court, and will not be disturbed absent an abuse of discretion." **Commonwealth v. Powell**, 171 A.3d 294, 305 (Pa. Super. 2017) (citation omitted).  Furthermore, "the standard for qualifying an expert is a liberal one: the witness need only have a reasonable pretension to specialized knowledge on a subject for which expert testimony is admissible." **Id.** at 306 (citation & quotation marks omitted).

Appellant's final two claims challenge the sufficiency and weight of the evidence support his convictions. **See** Appellant's Brief at 21-25. Regarding the sufficiency of the evidence,[17] Appellant contends the evidence does not support a finding that he was "the sole possessor and potential trafficker of" the drugs found in the vehicle. **See id.** at 22. He emphasizes the vehicle was owned by the driver, Walzer, who was within "arms length" of where the drugs were recovered, and who was in possession of two crack pipes which could have been adapted to ingest the fentanyl. **See id.** Furthermore, Appellant emphasizes the following: (1) the digital scale was not submitted for drug analysis or fingerprint testing; (2) Detective Legge did not consider the fact that Appellant could have used the cash he carried to ingest the fentanyl; and (3) the small amount of fentanyl recovered was more consistent with personal use than distribution, and had a street value of only $3 to $5 per bag. **See id.** at 23.

Finally, with regard to the weight of the evidence,[18] Appellant insists the "verdict should shock one's sense of justice" because the jury concluded that

---

[17] A challenge to the sufficiency of the evidence requires this Court to "determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt." **Commonwealth v. Williams**, 302 A.3d 117, 120 (Pa. Super. 2023) (citation omitted).

[18] A challenge to the weight of the evidence must first be presented to the trial court, "and if that court rejects the challenge, on appeal, we review its rejection of the claim for abuse of discretion." **Commonwealth v. Lynch**, *(Footnote Continued Next Page)*

- 22 -

Appellant "did not possess the primary piece of evidence (the digital scale) the Commonwealth argued proved intent to deliver," and, accordingly, must have improperly considered the "hand-to-hand" interaction testimony. Appellant's Brief at 24-25.

Upon our review of the record, the parties' briefs, and the relevant statutory and case law, we conclude the trial court thoroughly addressed and properly disposed of Appellant's remaining five claims in its May 11, 2023, opinion. *See* Trial Ct. Op., 5/11/23, at 10-27 (trial court opining that (1) it properly sustained the objection to Officer Conley's testimony that "hand to hand" interaction was an "exchange" and issued a cautionary instruction to the jury that it may presume was followed;[19] (2) jury's purported inconsistent acquittal on the charge of possession of drug paraphernalia did not undermine the guilty verdict on charge of PWID since "even without the digital scale, the

_____

242 A.3d 339, 353 (Pa. Super. 2020). Here, Appellant properly preserved his weight of the evidence challenge in a timely filed post-sentence motion. *See* Pa.R.Crim.P. 607(A)(1)-(3) (weight of the evidence claim must be raised before the trial court before sentencing, at sentencing, or in a post-sentence motion); Appellant's Motion for Post-Sentence Relief at 1-2.

[19] We note the trial court, alternatively, concluded Appellant "waived his objection" to the officer's testimony regarding the "hand-to-hand exchange" because he did not object the first time the officer referenced a hand-to-hand exchange. *See* Trial Ct. Op. at 19. We do not agree. The first two times the officer referenced a "hand-to-hand exchange" he was explaining, in general, that he had observed these types of drug sales in his work with the drug task force. *See* N.T., 11/15/22, at 35. However, shortly after the officer stated he witnessed Appellant engage in such an exchange, Appellant objected. *See* *id.* at 39. Thus, we would not determine the objection was waived.

evidence [was] sufficient to support [the] conviction[;]" (3) it did not err in permitting Detective Legge to testify as expert based on his experience, and Appellant did not object when court qualified the detective as an expert witness; (4) the evidence was sufficient to support Appellant's convictions of PWID and possession of fentanyl since the Commonwealth established (a) Appellant had constructive possession of the drugs recovered from the passenger floorboard when he was seen making furtive movements in that area as the vehicle was stopped, and (b) "the packaging of the drugs and large sum of cash[ on Appellant], together with the expert witness and absence of personal use paraphernalia, sufficiently established an intent to deliver[;]" and (5) "the jury's verdict did not shock the conscience" considering the evidence regarding Appellant's furtive movements, the packaging of the drugs recovered from the vehicle, the large sum of cash recovered from Appellant, and the lack of personal use paraphernalia for fentanyl).

Accordingly, for the remainder of Appellant's claims, we rest on the court's well-reasoned bases, and direct that a copy of the trial court's May 11, 2023, opinion be filed along with this memorandum, and attached to any future filings in this case.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 12/8/2023